1

2

3

4

5

6 IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
COUNTY OF KING

7

| | |
|---|---|
| ATM SHAFIQUL KHALID, an individual and on behalf of similarly situated, Xencare Software, Inc. | **No. 19-2-02755-0 SEA** |
| Plaintiff(s), | **PLAINTIFF KHALID'S SECOND AMENDED COMPLAINT** |
| vs. | |
| MICROSOFT CORPORATION, a Washington Corporation, One Redmond Way, Redmond, Washington | |
| Defendant(s). | |

COMES NOW the plaintiff, ATM Shafiqul Khalid ("Khalid"), and Xencare Software, Inc. ("Xencare") together referred as "Plaintiff" or "Plaintiffs" for a cause of action against Defendant Microsoft Corporation, ("Microsoft"), as "Defendant(s)", state and allege as follows:

## I.     JURISDICTION AND VENUE

1.      The plaintiff, ATM Shafiqul Khalid (hereinafter referred to as "Plaintiff" and by his last name "Khalid"), is a citizen of King County, Washington.

2.      The defendant, Microsoft Corporation, (hereinafter referred to as "Microsoft" or "Defendant(s)"), is a Washington corporation doing business in Washington. Microsoft has its

physical office to conduct business in King County, Washington, where Plaintiff worked for three (3) years during 2012-2015 and for 8 years during 1998-2006.

3.    This court has jurisdiction over the subject matter and personal jurisdiction over the Defendant pursuant to RCW 4.28.185(1)(a)-(c) and because the Employee Agreement was entered into in Washington state.

4.    Venue is proper pursuant to RCW 4.12.020, RCW 4.12.025 as most of the events giving rise to the complaint occurred in King County, Washington.

5.    All the claims rise from a) dispute over written contract with a six (6) year of statuary limitation pursuant to RCW 4.16.040(1), and b) violation of Washington Consumer Protection ACT that has a four (4) year statuary limitation pursuant to RCW 19.86.120.

## II.    FACTS

### Background

6.    Microsoft Corporation (commonly referred to as Microsoft) is an American multinational technology company headquartered in Redmond, Washington, that develops, manufactures, licenses, supports and sells computer software, consumer electronics and personal computers and services. In 2018, Microsoft reported $110 billion revenue 134,000 employees worldwide with around 47,000 employees in Washington alone. Its best-known software products are the Microsoft Windows line of operating systems, Microsoft Office suite, and Internet Explorer web browser. Its flagship hardware products are the Xbox game consoles and the Microsoft Surface tablet lineup. It is the world's largest software maker measured by revenues. It is also one of the world's most valuable companies. Microsoft was founded by Bill Gates and Paul Allen on April 4, 1975, to develop and sell BASIC interpreters for Altair 8800. It rose to dominate the personal

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

computer operating system market with MS-DOS in the mid-1980s, followed by Microsoft Windows. Microsoft also conducts a patent licensing business through Microsoft Technology Licensing, LLC.

7.      Plaintiff Khalid is a very creative engineer. Before joining Microsoft, Plaintiff published 14 research papers in journal and conference proceedings. Plaintiff had been named inventor in 20 patents issued by United States Patent and Trademark Office ("USPTO"), and European Patent Office ("EPO"). To exercise his creativity and intellectual capacity, Plaintiff has always maintained his own creative projects in various areas. Plaintiff is an expert in the area of Computer software, Operating Systems, Cloud and virtualization with 20+ years of experience.

8.      On December 16, 2011, Microsoft offered ATM Shafiqul Khalid a job as Senior Program Manager in Microsoft Bing division. Microsoft recruiter Shannon Carlsen asked Khalid to sign a Microsoft Corporation Employee Agreement ("Employee Agreement"). Before signing the Employee Agreement, Khalid wanted to attach an Invention Disclosure list under section 6 of the Microsoft Employee Agreement, but there was not a way to attach such a list online. The Microsoft employee agreement had a line "If you wish to attach a list of inventions, per paragraph 6, below, please contact your recruiter." Khalid contacted Shannon Carlsen as required by the agreement.

9.      Microsoft Employee Agreement section 5 contained, "as to any Invention complying with 5(a)-(c) above that results in any product, service or development with potential commercial application, MICROSOFT shall be given the right of first refusal to obtain exclusive rights to the Invention and such product, service or development." The invention referenced here was an invention solely owned by employee Khalid and his startup.

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

10.     Section 6 of this employee agreement contained, "I have attached a list describing all Inventions belonging to me and made by me prior to my employment with MICROSOFT that I wish to have excluded from this Agreement. If no such list is attached, I represent that there are no such Inventions."

11.     On December 19, 2011, Khalid sent an email to Shannon Carlsen attaching an Invention disclosure list per instruction from Shannon. Khalid signed the Employee Agreement. Later Shannon Carlsen acknowledged that she had received the invention disclosure list as attachment. Shannon copied that email to recruiting coordinator Ricardo Bustamante. Khalid was given no further instructions on this invention disclosure list.

12.     On January 9, 2012, Khalid participated in a Microsoft employee orientation program where Khalid was required to sign a hard copy of the employee agreement using INK. Khalid again submitted an Invention disclosure list and left a hand-written note on the Employee Agreement to show there were additional pages.

13.     The invention disclosure list Khalid submitted on December 19, 2011, had nine (9) patentable items with short descriptions of each invention. Khalid also marked a few items as pending patent applications with United States Patent and Trademark Office.

14.     On July 15, 2014, the United States Patent and Trademark Office issued US patent 8,782,637 (hereinafter referred to as "mini-cloud patent") that Khalid listed in the Invention Disclosure document on December19, 2011.

15.     As part of Microsoft job application Khalid submitted a resume. The resume had an embedded link on pending patents in its summary section. The list would have shown the publication of the mini-cloud patent application on December 12, 2011.

LOWE GRAHAM JONES℠

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

16.      After signing the Microsoft employee agreement on December 19, 2011, Plaintiff worked for Microsoft from January 9, 2011, until February 2, 2015, at Microsoft's offices in Bellevue and Redmond, Washington. Plaintiff also worked for Microsoft during the years of 1998-2006. Between December 19, 2011, and January 9, 2012, Khalid had to participate in a background check including filling out forms, reviewing materials relevant to the Microsoft role and chatting with the Microsoft hiring manager on job related matters to warm-up for the role. Disregarding the dates, Microsoft claimed inventive service from December 19, 2011, under the Employee Agreement.

17.      On May 27, 2016, as explained in more details later, Microsoft notified Khalid through its external counsel that no exclusion list existed, Microsoft claimed rights to patents Khalid had listed in the disclosure list, and that Khalid needed to give Microsoft a royalty free license to clear the patent dispute.

18.      Microsoft has approximately an 88% market share in desktop operating system. Microsoft has approximately an 88% market share in the office productivity suit market such as Microsoft Office suites that often are delivered as cloud services through programs including Office365. Microsoft also has a significant market share in the Gaming space.

## Development of

## 8,286,219,  8,782,637 and 10,846,118 Patents

19.      While in graduate school, during 1996-1997 Plaintiff invented the idea for a subscription that would allow a user to consume software without driving to the store to buy it. During 1997, Plaintiff did some work on this subscription idea in a very rudimentary form. Plaintiff continued

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

his work for years through 2010 when the idea evolved and transformed into mini-cloud subscription that would allow a user to consume computing resources and content on demand, integrating parts of the subscription idea Plaintiff had in 1996. Plaintiff had one patent application filed in 2001 for software subscription and another in 2007 to cover content subscription including digital movies. The idea evolved to form cloud computing for residential users using mini-cloud host and thin terminals. The US Patent office issued patent 8,782,637 (the "'637 patent") in 2014. Plaintiff had a total of 30 ideas in the form of patent applications or in the development stage. To date, in spite of any adverse situation, Plaintiff has continued adding his labor to refine and prosecute patent applications through US patent office building on those ideas.

20.     The mini-cloud '637 patent comprises several components: a) thin terminal something like Roku stick that can stick to any monitor then connect to b) subscription provider in the cloud and c) connect to a mini-cloud host device to deliver computing resources with specific integration techniques outlined in the patent. Microsoft Xbox One uses all components of 637 patents or mini-cloud invention. The invention is expected to reduce consumer cloud subscription cost by device consolidation.

21.     Around 2005, Plaintiff, while working with his friends and partner, made an invention to protect computer systems from viruses and spyware. Plaintiff filed a patent application in 2005 titled "SAFE AND SECURE PROGRAM EXECUTION FRAMEWORK." The application expired in 2006.

22.     On February 16, 2008, after months of efforts to commercialize the subject matter of the expired patent application on security, and after some validation and improvement with a "single

system framework," Plaintiff's startup team filed the 2005 patent application with the improved version titled "SAFE AND SECURE PROGRAM EXECUTION FRAMEWORK" with application number 12/032,663.

23.     On October 9, 2012, the US patent office issued Patent 8,286,219 (the "'219 Patent") for the application number 12/032,663.

24.     On November 24, 2020, the US patent office issued Patent 10,846,188 (the "'118 Patent"), a continuation of the '637 Patent, for application number 15/391,819.

25.     All those years, Khalid recruited a team of engineers to incubate and productize both security and mini-cloud technologies. Khalid and his team of around 20 people invested more than 30,000 engineering hours over the years with the equivalent of at least $3.5 million investment in the value of the labor. Khalid and his counsel also recently spent $2 million to clear claims which one of Microsoft's partners made on the '219 and the '637 patent.

26.     Defendant's mini-cloud patent was developed to host and deliver any digital services through cheap terminals in a cost-effective way that makes the cloud services affordable to an ordinary residential user. And the security patent was developed to protect the host like systems.

27.     Khalid founded Xencare Software, Inc., and owns a majority share in Xencare. Xencare delegated certain rights to Khalid.

### Micro-Data Center Incubation IP Licensing  Efforts

28.     By the year 2014, thin devices with a form factor similar to the "mini-cloud thin terminal" were developed by various companies including Roku, Amazon FireTV stick, etc. Those devices are so popular that today more than half of US households use one of those devices. Plaintiff decided to incubate further ideas using the mini-cloud host component with a business model

SECOND AMENDED COMPLAINT
KHALID v MICROSOFT
Page 7 of 24

LOWE GRAHAM JONES ₚₗₗₒ
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

called Micro-Data Center that can work as a single device or form a mega data center distributed inside a City. Plaintiff was planning to form an IP licensing business and incubator to further develop these ideas.

29.    On or around February 12, 2013, Plaintiff also had a discussion with Microsoft Vice President VP Amit Mittal on the mini-cloud invention. Amit later told Khalid that he had a discussion within Microsoft and wouldn't pursue the idea.

30.    In March 2014, Plaintiff had a meeting with Microsoft Executive Vice President (EVP) Kirill Tatarinov reporting to Microsoft CEO Satya Nadella. Plaintiff discussed the mini-cloud invention in detail. Kirill advised Khalid to talk to Stephen Elop who was planning to join Microsoft as part of Microsoft Nokia acquisition. Stephen Elop was designated to head a Microsoft device division that included Xbox One.

31.    On June 30, 2014, Plaintiff sent an email to Stephen Elop, Microsoft EVP reporting to Satya Nadella, Microsoft CEO. The email included Satya Nadella, Brad Smith, Microsoft General Counsel, and a few executives. In the email, Plaintiff proposed a business model based on the mini-cloud invention. On July 1, 2014, Stephen Elop declined Khalid's proposal.

32.    In 2015, after being terminated by Microsoft, Plaintiff put in effort to incubate and form a business, or license developed technologies to others. Plaintiff shared his proposal with Microsoft as well. Plaintiff needed funds from investors to pursue this business model.

33.    Plaintiff discussed part of software subscription with Bob Rinne, Khalid's manager at Microsoft, around the year 2000. Microsoft declined Plaintiff's idea.

34.    After leaving Microsoft on February 2, 2015, Plaintiff was trying to accumulate resources to form an IP licensing and/or incubation business. Khalid had around 30 inventions in the

pipeline to protect the micro-data center space to solve consumer problems in a market generating about $70 billion/year. Khalid wrote a proposal and shared the proposal with Microsoft as well.

35.     Plaintiff planned to g license his patent to a party in an attempt to build his patent portfolio and move onto incubation. When parties learned that Microsoft demanded a free license to the present and future patent family, investors were deterred from investing making it impossible for Khalid to financially support work on his 30-patent portfolio and micro-data center ideas.

### Microsoft Claims Khalid's Patents in 2015

36.     On February 19, 2015, Patrick Evans, Microsoft inhouse patent attorney wrote to Khalid noting that "[a]s per the Microsoft Corporation Employee Agreement you executed on December 19, 2011, Section 5 sets forth your obligations to assign intellectual property to Microsoft. Section 6 addresses inventions to be excluded, and no inventions were listed by you for exclusion." On the same date Khalid notified Patrick that Khalid had submitted an exclusion list.

37.     On March 3, 2015, Patrick Evan wrote to Khalid that "...[a]s per the employment agreement, Microsoft retains an assignment right in the patents. Please let me know if you need anything more" referring to US patent 8,782,637 and 8,286,219, sending a link to a form http://www.uspto.gov/forms/pto1595.pdf."  This form is used to transfer patent title and right from one party to another. In this case, Patrick wanted Khalid to transfer his patent right to Microsoft.

38.     On March 13, 2015, Khalid told Patrick Evan that Khalid submitted a copy of his original 2011 invention disclosure list.

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

39.     On April 14, 2015, Khalid requested Patrick check the hand-signed (using INK) employee agreement that Khalid signed on January 9, 2012. Khalid also requested a copy of the hand-signed employee agreement be sent to him. On April 16, 2015, Khalid reiterated his request for Shannon Flynn to have a copy of the INK signed Employee document sent to him. On April 27, 2015, Khalid notified Patrick that Khalid had not received the INK signed copy of the 2012 Employee Agreement.

40.     In 2015, Khalid provided Microsoft with a copy of the acknowledgment email Microsoft sent to Khalid in 2011 showing Microsoft received Khalid's Patent disclosure list. Microsoft knew Khalid's patent was published before Khalid joined Microsoft. Microsoft did not do anything to verify if Khalid's email record was authentic. Microsoft didn't preserve the recruiter's email but asked its employees to send an exclusion list to the recruiter. Microsoft by mistake or otherwise, deleted the recruiter's email box and later claimed the employee did not submit patent disclosure, then subsequently claimed ownership of the employee patent.

41.     On June 15, 2015, Khalid notified Patrick viaemail that Microsoft Xbox One is infringing on Khalid's mini-cloud patent US 8,782,637, and asked Patrick if there was any other way to resolve the dispute.

42.     On June 22, 2015, Khalid told Patrick via email that Khalid will give one security patent to Microsoft if Microsoft pay the build out cost for that patent. Khalid also told Patrick that Khalid will give license to Microsoft for mini-cloud patent if Microsoft is willing to pay a reasonable royalty fee. Patrick declined that offer.

43.     On July 9, 2015, Patrick told Khalid that Patrick will put together an agreement if Khalid will agree to give Microsoft royalty free access to all present and future patents related to Mini-

LOWE GRAHAM JONES PLLC
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

cloud systems, which would now include the '118 Patent, in exchange for resolving all disputes. Khalid found this offer to be very unfair, anti-competitive, and thus Khalid declined this "resolve offer" given by Patrick.

44.     In July 2015, Patrick also clarified that Microsoft's claim would extend to the mini-cloud patent family including past, present, and future patents that indirectly claim the other patents in the Invention Disclosure document.

45.     On August 29, 2015, Khalid told Patrick and Shannon that Microsoft's claim to inventions is interfering with his ability to refile many patent applications related to the patent family listed in the Invention Disclosure. Microsoft did not respond to release its claim.

46.     On May 27, 2016, Khalid received a letter ("M&G letter") from Microsoft outside counsel Andrew T. Pouzeshi at Merchant & Gold. The letter said, "[y]ou also agreed to provide a list identifying all inventions made by you or belonging to you prior to your employment with Microsoft. There is no evidence that you provided a list of inventions prior to either period of employment...your failure to exclude inventions described in the '219 and '637 patents resulted in a grant of an exclusive, royalty-free, irrevocable, worldwide license to those inventions to Microsoft." Through the external counsel, for the first time in a signed letter, Microsoft officially denied that Khalid had ever provided a list of inventions made by him or belonging to him.

47.     Microsoft asserted Citrix Systems, Inc was a Microsoft vendor. Microsoft also said, "[i]t is Microsoft's standard practice when entering into contract with vendors that Microsoft owns all of the intellectual property produced by the vendor and the vendor employees." Upon receipt of the M&G letter Khalid demanded Microsoft to send him a copy of the Vendor Agreement but Microsoft refused to share a copy with Khalid. On information or belief, the Microsoft/Citrix

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

licensing agreement alleged to cover any intellectual property Khalid produced while an employee of Citrix either does not exist or was entered into for the express purpose of requiring Khalid to grant Microsoft a royalty free license as a condition of any settlement with Citrix.

In the M&G letter, Microsoft also told Plaintiff that until Khalid granted a royalty free license to Microsoft to the '637 and the '219 patent, Khalid can't tell his investors that Microsoft has no interest in the patents.

### Microsoft Partner Citrix Systems, Inc.,

### Claimed '637 and '219 Patents

48.     On September 25, 2011, Citrix Systems, Inc.("Citrix") claimed underlying patent application resulting in the '219 and the '637 patents and withheld Plaintiff's severance until Khalid assigned the patent application to Citrix.

49.     On October 2, 2015, Khalid filed a suit against Citrix Systems, Inc.("Citrix") in King County Superior Court to clear cloud on title to the '219 patent and the '637 patent. Citrix is a Microsoft business partner and vendor. Citrix chose to dispute Khalid's ownership to the '219 and the '637 patents since the year 2011 by claiming Khalid didn't disclose his patent work and Citrix should have the right to Khalid patent under the employment contract Khalid had signed with Citrix. Citrix did not prevail on their assertion. Citrix counter sued Khalid and Xencare on May 12, 2016 in federal courts claiming the '219 and the '637 patents.

50.     During the state court trial, around 2017, Citrix Systems claimed Microsoft was their partner and Citrix delayed the state court case to do additional discovery relying on the Microsoft M&G letter. Those delays resulted in increased cost and loss of time to Khalid.

LOWE GRAHAM JONES PLLC
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

51.     In 2017, Citrix sent a discovery request to Microsoft as part of the state court proceedings. Microsoft produced the 2011 Microsoft Employee Agreement without the exclusion list Khalid submitted to Microsoft on December 19, 2011.

52.     During the trial in July of 2018, Citrix chief architect Brad Petersen testified and suggested that Citrix wanted to protect its partner and suggested that Khalid's patent could have been hostile to those partners. Brad also testified that Citrix never sold anti-virus products, an area the '219 patent targeted to solve. Brad also testified that Citrix didn't sell any thin client products either. The '637 patent included claims related to a thin terminal similar to a thin client.

53.     During the state court proceedings, around 2017, during communication with Khalid's counsel, Citrix counsel said that Citrix has a common interest with Microsoft to ensure that a patent doesn't get to patent troll. Citrix also testified that Citrix and Microsoft together held 70% market share in the virtual desktop space.

54.     On July 16 through 31, 2018, during the state court trial, Khalid's experts, John Forbes and Lorraine Barrick, testified that the value of the software security business and the thin terminal business based on both the '219 and the '637 patent would have been worth around $27 million. Citrix showed the Microsoft M&G letter to the jury to undermine the damages testimony.

55.     On August 1, 2018, in a unanimous verdict, 12 King County jurors found that Citrix breached its agreement, Khalid didn't breach the same agreement by not assigning the '219 patent and the '637 patent to Citrix.  Subsequently, King County Court Judge entered a $5.8 million judgment against Citrix that included a $3 million Jury award, and $2.8 million to cover

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

fees and costs. The Court also entered a declaratory judgment against Citrix that Citrix doesn't have any right to either the '219 or the '637 patent. The cost of litigation exceeded $2.8 million.

**Market Size of Technology Covered by Patents and Infringement**

56. On or around July 21, 2017, Microsoft CEO Satya Nadella said in their financial reporting, that "[o]ur gaming business now is more than $9 billion and growing profitably – 2017". Considering Microsoft is not the only player, the overall market size is expected to total at least $400 billion in business over 20 years. A nominal 1% royalty would set the infringement value at$4 billion that Microsoft sought to obtain wrongfully.

57. Microsoft Xbox One product infringes on claims 1, 4, and 20 of US patent 8,782,637 which is a violation of plaintiff's exclusive right protected under 35 USC § 271. The infringement is a direct use of all of the components disclosed in the '637 patent, or Xbox One use of components in an equivalent way that infringes on the '637 patent. Microsoft's infringement is willful, and Microsoft sought to wrongfully claim the '637 patent right to avoid liability under infringement laws.

**Offshore Tax Engineering Scheme to Avoid Taxes**

58. In 2012, one US senate panel report stated that from 2009 to 2011, Microsoft shifted $21 billion offshore, almost half of its U.S. retail sales revenue, saving up to $4.5 billion in taxes on goods sold in the United States. The report also stated the software giant shifts royalty revenue to units in low-tax nations, such as Singapore and Ireland, avoiding billions of dollars in U.S. taxes. Those unfair practices impact consumers.

59. In 2015, the New York Times and Bloomberg made reports based on leaked Panama papers that corporations had been using intellectual property rights as a vehicle to transfer money

SECOND AMENDED COMPLAINT
KHALID v MICROSOFT
Page 14 of 24

LOWE GRAHAM JONES PLLC
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

to offshore accounts to avoid income taxes in the form of tax engineering. In such a tax engineering scheme, corporations would transfer right to intellectual properties to an offshore entity often without any employee and then make a generous royalty payment to such an offshore account and enjoy low or no tax. Those leaked reports and public statements showed that Microsoft and its partner moved billions of dollars offshore.

60.     By 2017, corporations have moved around $2.8 trillion dollars that should have been in the USA and tax revenue from them could have funded many public projects. If corporations develop their intellectual properties through extortion, illegal, unfair and grossly unethical practices, those tax engineering schemes would be unfair and illegal practices. Also, those corporations never disclosed to their employees that employees work towards intellectual properties would be used to further unfair tax engineering practices. With full disclosures, patriotic employees who are the actual owner of intellectual properties would not assign their private right to corporations and not associate themselves with tax engineering schemes that deprive our nation as a whole and their own families of the tax supported programs and places of expectation for our tax dollars.

61.     Corporations used intellectual property to increase brand value/trademark and used the collection of intellectual property to make generous royalty payments to offshore accounts that held rights to intellectual property in order to receive royalty payments and to deceive the IRS and the US public.

**Microsoft Employee Patent Grabbing Scheme is**

**Injurious to Employees Rights**

LOWE GRAHAM JONES PLLC
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

62.     Microsoft Agreement section 5 award Microsoft "first right of refusal" to any employee patent even if the patent is not related to Microsoft business and protected under RCW 49.44.140. That section violates Washington Statute RCW 49.44.140 and similar statutes in other states.

63.     The "first right of refusal" has value greater than Zero (0) and an employee losses that every day he remains under the contract. The right is in the form of an option, Microsoft can choose to exercise that option at Zero(0) exercise price. The option is more like a mining right to a piece of land owned by employee where the option has value even if it is unknown if that land has any mineable materials.

64.     The Microsoft Employee Agreement assigns right to an employee's future inventions during his employment at the time he signs the Employee Agreement. The agreement doesn't set any scope or boundary to such inventions. Microsoft does not have any inhouse objective standard, or review process, rather the company applies subjective financially motivated, anti-competitive practices.

65.     Any right associated with a patent is a right protected by the Fourteenth Amendment of the United States Constitution. By not defining a clear boundary, Microsoft deprives its employees of due process of law. Microsoft contaminates employee's future invention by creating cloud and uncertainty around the ownership, right, and title to invention upon signing the employee agreement. Microsoft drives the value of such inventions to Zero(0) or negative dollar by demanding a free license with the employee bearing all expenses to maintain the patent family

66.     Microsoft, by claiming any of Plaintiff's patent rights, claimed some services Plaintiff rendered for himself and his start-up that Plaintiff would never render for any employer

voluntarily. Plaintiff's service covered thousands of hours of work he contributed to his patents through development and prosecution of patents that by no means falls under the term of Microsoft Employee Agreement.

67.     The Microsoft Employee Agreement, Section 5 and Section 6, are designed to get free labor from employees and those employees would be working without knowing that Microsoft would or could claim and benefit from this free labor.

68.     Microsoft's use of the exclusion list under Section 6, either destroying the employee's submitted list, as in this Khalid's instant, and perhaps an unknown number of other employee's, or refusing to acknowledge its existence, as this situation has shown, is designed to contaminate an employee's patent that effectively transfers free labor to Microsoft that the employee would never render to Microsoft voluntarily.

69.     Once Microsoft successfully contaminates an employee's patent, as in the instant case, that employee would need tremendous financial resources to clear their patent right through court. An ordinary employee can't afford the time or the legal costs to pursue and challenge a company on the legal court front, nor should anyone be forced to challenge such deception. In the face of such deception, an ordinary employee is forced to unwillingly share his labor with Microsoft without compensation.

70.     Microsoft asked Plaintiff to sign the Employment Agreement on December 19, 2011. Plaintiff started receiving a salary from Microsoft on January 9, 2012. Microsoft later claimed the Employee Agreement was in force from December 19, 2011, not from January 9, 2012, therefore the agreement transferred all inventive services to Microsoft from December 19, 2011. Microsoft didn't pay for 3 weeks of services, but claimed inventive service in an attempt to retain

free labor, first right of refusal to employee patent, and assignment right to invention for that 3 weeks window.

71.     Microsoft has a systematic scheme, where Microsoft would maliciously take financial advantage of its employees, and engage its multiple employees in employment opportunities, while conspiring to claim and then profit from an employee's patent--an act that deprives the employee from rights he or she is protected by in both the Thirteenth and Fourteenth Amendments of the United States' Constitution.

72.     An ordinary employee can't afford hundreds of thousands of dollars in costs to protect his right through litigation, and he or she can't afford to abandon their patent work because that would be total destruction of their personal property. Rather, they would find him or herself in an unknowing and surprising trap of financial and property submittal. This equates to involuntary servitude under the Thirteenth Amendment. And Microsoft is violating the Fourteenth Amendment right by transferring employee patent right without due process of law. Microsoft doesn't offer any additional compensation for transferring such patent right. Microsoft violation is continuing violation. Because of Microsoft violation, Plaintiff was deprived of enjoyment of his patent right, and Plaintiff couldn't use his labor time and efforts for his intended purpose.

73.     Microsoft conducts a few billion dollars of business with both the federal and local governments every year.

74.     On January 30, 2009, in an email to Cnet News in responding to Microsoft v Miki lawsuit, where Microsoft asserted Miki didn't disclose his patent to Microsoft before employment, Miki Mullor said that he had informed Microsoft about his patent in his resume and employment agreement. Miki backed his statement, and this shows Microsoft assertion in M&G letter that

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

Khalid didn't disclose his inventions is not the first of such statements from Microsoft that show either irreparable and costly neglect in Microsoft's applicant/new employee document bookkeeping, or show an intention to steal intellectual property and labor from their employees.

75.     On January 30, 2009, Miki Mullor further wrote to Cnet, "Microsoft's complaint against me in Washington is a shameful and a desperate attempt to put pressure on me and my family from continuing to pursue our legal rights in the federal court in Los Angeles." Miki's filed patent infringement lawsuit against Microsoft partner Dell, HP and Toshiba in Federal Court in Los Angeles.

76.     Microsoft maintained its pressure scheme on Miki Mullor until the end of 2009 when Miki settled with Microsoft on the patent issue under undisclosed terms. Microsoft, by using its M&G letter in 2016, tried to achieve a similar result where Microsoft partner Citrix System tried to use this same Microsoft assertion written in that letter to harm Khalid's damages claims against Citrix and win on an argument that either Microsoft or Citrix owns the '219 and the '637 patents.

**<u>Damages</u>**

77.     The plaintiffs suffered damages caused and proximately caused by the actions of the Defendant as set forth below.

### III.     VIOLATION ALLEGED

**(Count I - Microsoft Violated WA Consumer Protection Act under RCW 19.86.020)**

78.     Plaintiff hereby incorporates paragraphs 1 through 77.

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

79.     Microsoft's act of claiming ownership of employees' patents free of cost when the employee developed such Patent before joining Microsoft and practice to destroy, conceal, withhold, or deny employee invention disclosures to intimidate or extort an employee to gain access to an employee's patent is both an unfair and a deceptive practice under RCW 19.86.020.

80.     Microsoft's actions related to the employment agreement occurred in trade or commerce.

81.     There exists a public interest embedded in patent rights. Abusing patent rights is injurious to the public. Also, there is a public interest because Microsoft uses the same employee agreement, and employs the same practice to destroy, conceal, or withhold employee invention disclosures with many employees, those employees have been damaged or exposed to Microsoft's unfair practices that can and likely has damaged many employees in the same way it has damaged the Plaintiff.

**(Count II – Defendant Breached Employee Agreement with Plaintiff)**

82.     Plaintiff hereby incorporates paragraphs 1 through 77.

83.     Khalid submitted an exclusion list under section 6 of the Employee Agreement he entered and performed with Microsoft. By claiming that Khalid didn't submit the exclusion and subsequently by claiming the '219 patents, the '637 and the '118 patents Microsoft breach the Employee Agreement.

84.     Microsoft promised Khalid with explicit terms that Microsoft would not claim patent in the exclusion list or that meets section 5 criteria. Microsoft breached that promise.

**(Count III – Defendant Breached a Duty of Good Faith and Fair Dealing Under Employee Contract)**

85.     Plaintiff(s) hereby incorporates paragraphs 1 through 77.

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

86.     The duty of good faith and fair dealing arises when one party has discretionary authority to determine a future contract term. Here, Microsoft asked Plaintiff Khalid to submit a patent exclusion list to his Microsoft recruiter. Upon receipt of the list, Microsoft acknowledged, Microsoft had full control over how to preserve/control those records. Microsoft violated a duty of good faith and fair dealing by claiming that the exclusion list Plaintiff Khalid submitted didn't exist, this resulted in Microsoft claiming an entitlement to a royalty-free license to patent(s) listed in the mismanaged exclusion list.

**(Count IV – Declaratory Relief that Microsoft Does Not Own the '219, the '637 and the '118 Patents)**

87.     Plaintiff(s) hereby incorporates paragraphs 1 through 77.

88.     The Microsoft Employment Agreement, a contract, is not enforceable to Plaintiff's '219, '637, and '118 patents.

89.     Microsoft does not own Plaintiff's '219,'637, and '118 patents.

90.     Microsoft does not have any right to Plaintiff's '219, '637 and '118 patents.

**(Count V – Declaratory and Injunctive Relief)**

91.     Plaintiff(s) hereby incorporates paragraphs 1 through 77.

92.     A declaration that Microsoft use of First Right of Refusal in section 5 of the Employee Contract is unenforceable in violation of RCW 49.44.140(1).

93.     A declaration that Microsoft contract violated RCW 49.44.140(1), RCW 49.44.140(2) and RCW 49.44.140(3).

**(Count VI - Reserving Right to Add New Claim or Amending Claims)**

94.      Plaintiff hereby incorporates paragraphs 1 through 80.

LOWE GRAHAM JONES PLLC
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

95.    Plaintiff reserved his right to add back claims in the First Amended Complaint not added in this complaint, including but not limited to claim related to RCW 19.86.030.

96.    Plaintiffs(s) are reserving the right to add new claims and/or to amend any claims in this complaint as the law permits.

## IV.    REQUESTED RELIEF

WHEREFORE, plaintiffs pray for relief as follows:

1.    Civil remedies under RCW 19.86.090 and RCW 9A.82.100(4)(d) including treble damage, cost, and fees.

2.    Damages to Plaintiff's Career in term of lost salary and benefits from his startup. Damages to Plaintiff's Executive career in terms of executive pay and other benefits.

3.    Damages for loss of patents, and damages for loss of profit in businesses in an amount to be proven at trial. Damages to Startup Company in an amount to be proven at trial.

4.    Damages for emotional distress, loss of enjoyment of life, humiliation, personal indignity, embarrassment, fear, anxiety, and/or anguish.

5.    Injunctive relief and declaratory judgment in Plaintiff's favor.

6.    Prejudgment interest in an amount to be proven at trial.

7.    Compensation for the tax penalty associated with any recovery.

8.    Costs and legal fees pursuant to RCW 59.18, RCW 49.48.030, RCW 49.52.070, RCW 19.86.090 and RCW 4.84 or other rules of law and/or equity.

9.    Civil penalty under RCW19.86.140 and remedy under RCW 19.86.080, RCW 10.01.100 and RCW 9.92.030

LOWE GRAHAM JONES ᴾᴸᴸᶜ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

10.    Protection under the whistleblower laws and/or similar laws so that Defendant(s) can't harass Plaintiff.

11.    Penalty for inconvenience and discomfort as authorized under <u>Cherberg v. Peoples Nat'l Bank, 564 P. 2d 1137 - Wash: Supreme Court 1977</u>.

12.    Whatever further and additional relief the court shall deem just and equitable.

## V.    DEMAND FOR JURY

Plaintiff(s) hereby demands that this case is tried before TWELVE jurors.


EXECUTED at Seattle, Washington on this 20th day of November 2023

_____

Mark P. Walters

LOWE GRAHAM JONES PLLC
Mark P. Walters, WSBA No. 30819
Mitchell D. West, WSBA No. 53103
*Walters@LoweGrahamJones.com*
*West@LoweGrahamJones.com*
1325 Fourth Avenue, Suite 1130
Seattle, Washington 98101
T: 206.381.3300
F: 206.381.3301

*Attorneys for Plaintiff*


## CERTIFICATE OF SERVICE

I, Rischel Voigt, hereby certify under penalty of perjury of the laws of the State of Washington that on November 20, 2023, I caused to be served a copy of the foregoing

LOWE GRAHAM JONES PLLC
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

1   document was filed electronically with the Clerk of the Court using the CM/ECF system.

2   Notice of this filing will be sent to all counsel of record via the court's electronic filing system.

3                                                      */s/Rischel  Voigt*
4                                                      Rischel Voigt, Paralegal

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301