THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ATM SHAFIQUL KHALID; XENCARE SOFTWARE, INC.,

Plaintiffs,

v.

MICROSOFT CORPORATION, a Washington Corporation,

Defendant.

Case No. 2:24-cv-00449

**DECLARATION OF MARK P. WALTERS IN SUPPORT OF PLAINTIFF'S MOTION FOR REMAND**

I, Mark P. Walters, hereby declare that the following is true and correct:

1.      I am over the age of eighteen and a resident of the State of Washington. I make this declaration from my personal knowledge and am competent to testify to all matters herein. I am one of the attorneys for the Plaintiffs in this matter and partner working in intellectual property litigation for Lowe Graham Jones PLLC (LGJ).

2.      Attached as **Exhibit A** is a true and correct copy of the complaint filed by the Plaintiffs in this case in King County Superior Court on January 28, 2019. Plaintiffs' original complaint in this matter alleged at paragraphs 27 and 33 that Microsoft's improper claims to own the Disputed Patents harmed Khalid's "IP licensing and/or incubation

**DECLARATION OF MARK P. WALTERS** - 1
No. 24-cv-00449



business" which business involved "efforts to … license developed technologies, [sic] to others."

3.    Allegations that Microsoft's conduct damaged "IP licensing and/or incubation business" which business involved "efforts to … license developed technologies, [sic] to others" were carried over into his second amended complaint filed on November 20, 2023, at paragraphs 28 and 34. Attached as **Exhibit B** is a true and correct copy of Khalid's Second Amended Complaint filed November 20, 2023.

4.    Khalid handled this case pro se until undersigned counsel appeared for him on September 28, 2023, to assist Khalid in his efforts to complete discovery, prepare the case for trial, and to conduct the trial.

5.    Since counsel appeared for Khalid, the parties have produced thousands of pages of relevant documents, taken several depositions, briefed and argued cross-motions for summary judgment, and declared the case ready for trial pursuant to King County local civil rules. Attached as **Exhibit C** is a true and correct copy of the parties' Joint Statement of Trial Readiness which was filed on March 29, 2024.

6.    Trial was set to begin in this matter on May 20, 2024, and the parties were to appear at a pretrial conference on April 5, 2024. Attached as **Exhibit D** is a true and correct copy of the order setting the pretrial conference.

7.    The parties filed cross motions for summary judgment on February 2, 2024, and those motions were heard by Judge Jim Rogers on March 1, 2024. At the time of Microsoft's Notice of Removal on April 3, 2024, the parties had not received an order deciding either dispositive motion.

**DECLARATION OF MARK P. WALTERS** - 2
No. 24-cv-00449



LOWE GRAHAM JONES_PLLC_

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

8.      On September 18, 2023, Plaintiffs served a supplemental witness disclosure pursuant to King County local civil rules. This supplemental witness disclosure identified both Tony Mason and Scott Cragun as experts for Plaintiffs, as well as a summary of their expected testimony. Attached as **Exhibit E** is a true and correct copy of Plaintiffs' supplemental witness disclosure. I note that the certificate of service for this disclosure says September 18, 2022, but it was served on September 18, 2023.

9.      Substantially the same disclosure was made for Tony Mason in a Supplemental Witness Disclosure served by Khalid on March 20, 2023. A true and correct copy of Khalid's March 2023 witness disclosure is attached hereto as **Exhibit F**.

10.     The damages documents referenced in Khalid's disclosure of testimony for Mr. Mason and Mr. Cragun refer to documents he served on March 20, 2023, entitled "Damage Model Washington State Court" and two claim charts. The first document disclosed in detail one of Khalid's damages theories based on "a hypothetical licensing negotiation model where Khalid would have earned fair royalty from his inventions" but for Microsoft's wrongful conduct. The referenced claim charts map the elements of several claims of US Patent Nos. 8,782,637 and 10,846,118 onto Microsoft's Xbox One product and Sony's Play Station PS4 product. The claim chart for Microsoft also mapped the elements of Claim 1 of U.S. 8,286,219 onto Microsoft's Windows 10 S-mode product.

11.     The parties conducted formal mediation on February 12, 2024, before the Honorable Elizabeth D. Laporte (Ret.). In connection with this mediation, on February 8, 2024, Plaintiffs provided a preliminary report from its expert Tony Mason. A true and correct copy of this preliminary report is attached hereto as **Exhibit G**. Plaintiffs mediation

**DECLARATION OF MARK P. WALTERS** - 3
No. 24-cv-00449

LOWE GRAHAM JONES ᴾᴸᴸᶜ
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

statement also included preliminary damages calculations from Scott Cragun, including a calculation for "[d]amages based on per-unit license received by Microsoft as a result of improper ownership claims" to the Disputed Patents because "Microsoft has essentially enjoyed a license under Khalid's patents without remuneration to Khalid." The damages calculations at mediation also included damages because "Microsoft's breach resulted in damage to Khalid's patent term for at least the '219, '637, and '118 patents, as he was unable to license or enforce these while Microsoft maintained its improper ownership claims, which effectively clouded Khalid's title and deprived him of the benefit of the entire patent term, beginning in February 2015."

12.    Attached as **Exhibit H** is a true and correct email thread between Microsoft counsel Erin Bernstein and the King County Court's Bailiff Monica Gillum regarding an order on pending motions for summary judgement with Ms. Bernstein notifying the court not to rule on the pending summary judgement motions.

I HEREBY SWEAR UNDER PENALTY OF PURJERY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED at Seattle, Washington on this 11th day of April, 2024.

LOWE GRAHAM JONES PLLC

Mark P. Walters, WSBA No. 30819
Mitchell D. West, WSBA No. 53103
*Walters@LoweGrahamJones.com*
1325 Fourth Avenue, Suite 1130
Seattle, WA 98101
T: 206.381.3300
F: 206.381.3301

**DECLARATION OF MARK P. WALTERS** - 4
No. 24-cv-00449

LOWE GRAHAM JONES PLLC
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

## CERTIFICATE OF SERVICE

I, Rischel Voigt, hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record via the Court's CM/ECF system and/or electronic mail on April 11, 2024.

By: */s/ Rischel Voigt*
Rischel Voigt, Paralegal

**DECLARATION OF MARK P. WALTERS** - 5
No. 24-cv-00449



# EXHIBIT A

**FILED**
2019 JAN 28
KING COUNTY
SUPERIOR COURT CLERK

CASE #: 19-2-02755-0 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
COUNTY OF KING

ATM SHAFIQUL KHALID, an individual and

on behalf of similarly situated, Xencare

Software, Inc.

|                         | **19-2-02755-0 SEA** |

      Plaintiff(s),

**COMPLAINT FOR DAMAGES FOR CPA, BREACH OF CONTRACT, CLASSACTION**

vs.

MICROSOFT CORPORATION,

a Washington Corporation,

One Redmond Way, Redmond, Washington

      Defendant(s).

COMES NOW the plaintiff, ATM Shafiqul Khalid ("Khalid"), and Xencare Software, Inc. ("Xencare") together referred as "Plaintiff" or "Plaintiffs" for a cause of action against Defendant Microsoft Corporation, ("Microsoft"), as "Defendant(s)", state and allege as follows:

COMPLAINT
KHALID v MICROSOFT
Page 1 of 30

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## I.      JURISDICTION AND VENUE

1.  The plaintiff, ATM Shafiqul Khalid  (hereinafter referred to as "Plaintiff" and by his last name "Khalid"), is a citizen of King County, Washington.

2.  The defendant, Microsoft Corporation, (hereinafter referred to as "Microsoft" or "Defendant(s)"), is a Washington corporation doing business in Washington. Microsoft has its physical office to conduct business in King County, Washington, where Plaintiff worked for three (3) years during 2012-2015 and for 8 years during 1998-2006.

3.  This court has jurisdiction over the subject matter and personal jurisdiction over the Defendant pursuant to RCW 4.28.185(1)(a)-(c) and because the Employee Agreement was entered into in Washington state.

4.  Venue is proper pursuant to RCW 4.12.020, RCW 4.12.025 as most of the events giving rise to the complaint occurred in King County, Washington.

5.  All the claims rise from a) dispute over written contract with a six (6) year of statuary limitation pursuant to RCW 4.16.040(1), b) violation of Washington Consumer Protection ACT that has a four (4) year statuary limitation pursuant to RCW 19.86.120, and c) property damage that has a three (3) year statuary limitation pursuant to RCW 4.16.080(2).

## II.      FACTS

### Background

6.  Microsoft Corporation (commonly referred to as Microsoft) is an American multinational technology company headquartered in Redmond, Washington, that develops, manufactures, licenses, supports and sells computer software, consumer electronics and personal computers and services. In 2018, Microsoft reported $110 billion revenue 134,000 employees worldwide with around 47,000 employees in Washington alone. Its best-known software products are the Microsoft Windows line of operating systems, Microsoft Office suite, and Internet Explorer web browser. Its flagship hardware products are the Xbox game consoles and the Microsoft Surface tablet lineup. It is the world's largest software maker measured by revenues. It is also one of the world's most valuable companies. Microsoft was founded by Bill Gates and Paul Allen on April 4, 1975, to develop and sell BASIC interpreters for Altair 8800. It rose to dominate the personal computer operating system market with MS-DOS in the mid-1980s, followed by Microsoft Windows. Microsoft also conducts a patent licensing business through Microsoft Technology Licensing, LLC.

7.  Plaintiff Khalid is a very creative engineer. Before joining Microsoft Plaintiff, he published 14 research papers in journal and conference proceedings. Plaintiff had been named inventor in 20 patents issued by United States Patent and Trademark Office ("USPTO"), and European Patent Office ("EPO"). Plaintiff always had his own creative projects in various areas to exercise his creativity and intellectual capacity. Plaintiff is an expert in the area of Computer software, Operating Systems, Cloud and virtualization with 20+ years of experience.

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA 98052
(425) 445-7157

8. On December16, 2011, Microsoft offered ATM Shafiqul Khalid a job as Senior Program Manager in Microsoft Bing division. Microsoft recruiter Shannon Carlsen asked Khalid to sign a Microsoft Corporation Employee Agreement ("Employee Agreement"). Before signing the Employee Agreement, Khalid wanted to attach an Invention Disclosure list under section 6 of the Microsoft Employee Agreement, but there was not a way to attach such a list online. The Microsoft employee agreement had a line "If you wish to attach a list of inventions, per paragraph 6, below, please contact your recruiter". Khalid contacted Shannon Carlsen as required by the agreement.

9. Microsoft Employee Agreement section 5 contained, "as to any Invention complying with 5(a)-(c) above that results in any product, service or development with potential commercial application, MICROSOFT shall be given the right of first refusal to obtain exclusive rights to the Invention and such product, service or development." The invention referenced here was an invention solely owned by employee Khalid and his startup.

10. Section 6 of this employee agreement contained, "I have attached a list describing all Inventions belonging to me and made by me prior to my employment with MICROSOFT that I wish to have excluded from this Agreement. If no such list is attached, I represent that there are no such Inventions."

11. On December19, 2011, Khalid sent an email to Shannon Carlsen attaching an Invention disclosure list per instruction from Shannon. Khalid signed the Employee Agreement. Later Shannon Carlsen acknowledged that she had received the invention disclosure list as attachment. Shannon copied that email to recruiting coordinator Ricardo Bustamante. Khalid was given no further instructions on this invention disclosure list.

COMPLAINT
KHALID v MICROSOFT
Page 4 of 30

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

12. On January9, 2012, Khalid participated in a Microsoft employee orientation program where Khalid was required to sign a hard copy of the employee agreement using INK. Khalid again submitted an Invention disclosure list and left a hand-written note on the Employee Agreement to show there were additional pages.

13. The invention disclosure list Khalid submitted on December19, 2011, had nine (9) patentable items with short description of the invention. Khalid also marked a few items as pending patent applications with United States Patent and Trademark Office.

14. On July15, 2014, the United States Patent and Trademark Office issued US patent 8,782,637 (hereinafter referred to as "mini-cloud patent") that Khalid listed in the Invention Disclosure document on December19, 2011.

15. As part of Microsoft job application Khalid submitted a resume. The resume had an embedded link on pending patent from its summary section. The list would have shown the publication of the mini-cloud patent application on December12, 2011.

16. After signing the Microsoft employee agreement on December19, 2011, Plaintiff worked for Microsoft from January9, 2011, until February 2, 2015, at Microsoft offices in Bellevue and Redmond, Washington. Plaintiff also worked for Microsoft during the years of 1998-2006.

17. On May 27, 2016, as explained in more details later, Microsoft notified Khalid through its external counsel that no exclusion list existed, Microsoft got some right to patents Khalid had listed in the disclosure list, and Khalid need to give Microsoft royalty free license to clear patent dispute.

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

18. Microsoft has 88% market share in desktop operating system. Microsoft has 88% market share in office productivity suit market such as Microsoft Office suites that often are delivered as cloud services such as Office365. Microsoft also has significant market share in Gaming space.

## Development of

## 8,286,219 and 8,782,637 Patent

19. While in graduate school, during 1996-1997 Plaintiff invented an idea of subscription that would allow a user to consume software without driving to store to buy it. During 1997, Plaintiff did some work on subscription in very rudimentary form. Plaintiff continued his work for years through 2010 when the idea evolved over time and transformed into mini-cloud subscription that would allow a user to consume computing resources and content on demand, integrating parts of Plaintiff's subscription idea plaintiff had in 1996. Plaintiff had one patent application filed in 2001 software subscription and another in 2007 to cover content subscription including digital movie. The idea evolved to form cloud computing for residential users using mini-cloud host and thin terminals. The US Patent office issued a patent 8,782,637 ("637 patent") in 2014. Plaintiff had a total of 30 ideas in the form of patent or in the development stage. To date, in spite of any adverse situation, Plaintiff continued adding his labor to refine and prosecute patent applications through US patent office coming from those ideas.

20. Mini-cloud 637 patent comprises several components: a) thin terminal something like Roku stick that can stick to any monitor then connect to b) subscription provider in the cloud and

COMPLAINT
KHALID v MICROSOFT
Page 6 of 30

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

c) connect to a mini-cloud host device to deliver computing resources with specific integration techniques outlined in the patent. Microsoft Xbox One uses all components of 637 patents or mini-cloud invention. The invention is expected to reduce consumer cloud subscription cost by device consolidation.

21. Around 2005, Plaintiff, while working with his friends and partner, made an invention to protect computer systems from viruses and spyware. Plaintiff filed a patent application in 2005 titled "SAFE AND SECURE PROGRAM EXECUTION FRAMEWORK". The application expired in 2006.

22. On February 16, 2008, after months of efforts to commercialize the subject matter of the expired patent application on security, after some validation and improvement with "single system framework". Plaintiff startup team filed the 2005 patent application with the improved version titled "SAFE AND SECURE PROGRAM EXECUTION FRAMEWORK" with application number 12/032,663.

23. On October 9, 2012, the US patent office issued Patent 8,286,219 ("the '219' Patent") for the application number 12/032,663.

24. All those years, Khalid recruited a team of engineers to incubate and productize both security and mini-cloud technologies. Khalid and his team of around 20 people invested more than 30,000 engineering hours over the years with equivalent of at least $3.5 million investment as value of labor. And Khalid and his counsel recently spent $2 million to clear claims which one of Microsoft's partner had made on the 219 and the 637 patent.

25. Defendant's mini-cloud patent was developed to host and deliver any digital services through cheap terminals in a cost-effective way that makes the cloud services affordable to an

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA 98052
(425) 445-7157

ordinary residential user. And the security patent was developed to protect the host like systems.

26. Khalid founded Xencare Software, Inc., and owns majority stocks. Xencare delegated certain rights to Khalid.

## Micro-Data Center Incubation IP Licensing Efforts

27. By the year 2014, thin devices with a form factor similar to the "mini-cloud thin terminal" were developed by various companies including Roku, Amazon FireTV stick, etc. Those devices were so popular that today more than half of US households use one of those devices. Plaintiff decided to incubate further on ideas using the mini-cloud host component with a business model called Micro-Data Center that can work as a single device or form a mega data center distributed inside a City. Plaintiff was planning to form an IP licensing business and incubation to further develop ideas.

28. On or around February 12, 2013, Plaintiff also had a discussion with Microsoft Vice President VP Amit Mittal on the mini-cloud invention. Amit later told Khalid that he had a discussion within Microsoft and wouldn't pursue the idea.

29. In March 2014, Plaintiff had a meeting with Microsoft Executive Vice President (EVP) Kirill Tatarinov reporting to Microsoft CEO Satya Nadella. Plaintiff discussed the mini-cloud invention in details. Kirill advised Khalid to talk to Stephen Elop who was planning to join Microsoft as part of Microsoft Nokia acquisition. Stephen Elop was designated to head Microsoft device division that included Xbox One.

COMPLAINT
KHALID v MICROSOFT
Page 8 of 30

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond. WA 98052
(425) 445-7157

30.  On June 30, 2014, Plaintiff sent an email to Stephen Elop, Microsoft EVP reporting to Satya Nadella, Microsoft CEO. The email included Satya Nadella, Brad Smith, Microsoft General Counsel, and a few executives. In the email, plaintiff proposed a business model based on the mini-cloud invention. On July 1, 2014, Stephen Elop declined Khalid's proposal.

31.  In 2015, after being terminated by Microsoft, Plaintiff put in efforts to incubate and form business, or license developed technologies, to others. Plaintiff shared his proposal with Microsoft as well. Plaintiff needed some funds from investors as well.

32.  Plaintiff discussed part of software subscription with Bob Rinne, Khalid's manager at Microsoft, around 2000 timeframe. Microsoft declined Plaintiff's idea.

33.  After leaving Microsoft on Feb 2, 2015, Plaintiff was trying to accumulate resources to form an IP licensing and/or incubation business. Khalid had around 30 inventions in the pipeline to protect the micro-data center space to solve consumer problem in a market size of $70 billion/year. Khalid wrote a proposal and shared with Microsoft as well.

34.  Plaintiff planned to give some party easy license to his patent in an attempt to build his patent portfolio and move on incubation. When parties found that Microsoft had a demand to get free license to all present and future patent family, this deterred party investors, which made it impossible for Khalid to financially support his work on his 30 patent portfolio and micro-data center ideas.

**Microsoft Claims Khalid's Patents  in 2015**

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA 98052
(425) 445-7157

35. On February19, 2015, Patrick Evans, Microsoft inhouse patent attorney wrote to Khalid "As per the Microsoft Corporation Employee Agreement you executed on December 19, 2011, Section 5 sets forth your obligations to assign intellectual property to Microsoft. Section 6 addresses inventions to be excluded, and no inventions were listed by you for exclusion". On the same date Khalid notified Patrick that Khalid had submitted an exclusion list.

36. On March 3, 2015, Patrick Evan wrote Khalid "...As per the employment agreement, Microsoft retains an assignment right in the patents. Please let me know if you need anything more" referring to US patent 8,782,637 and 8,286,219, sending a link to a form http://www.uspto.gov/forms/pto1595.pdf". This form is used to transfer patent title and right from one party to another. In this case, Patrick wanted Khalid to transfer his patent right to Microsoft.

37. On March 13, 2015, Khalid told Patrick Evan that Khalid submitted a copy of his original 2011 invention disclosure list.

38. On April14, 2015 Khalid requested Patrick to check with the hand-signed (using INK) employee agreement that Khalid signed on January 9, 2012. Khalid also requested to have a copy sent to him of the hand signed employee agreement. On April 16, 2015, Khalid re-requested from Shannon Flynn to have a copy sent to him of the INK signed Employee document. On April27, 2015, Khalid notified Patrick that Khalid had not received the INK signed copy of the 2012 Employee Agreement.

39. On June15, 2015, Khalid notified Patrick over Email that Microsoft Xbox One is infringing on Khalid's mini-cloud patent US 8,782,637, and he asked Patrick if there was any other way to resolve the dispute.

COMPLAINT
KHALID v MICROSOFT
Page 10 of 30

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA 98052
(425) 445-7157

40. On June 22, 2015, Khalid told Patrick over Email that Khalid will give one security patent to Microsoft if Microsoft pay build out cost for that patent. Khalid also told Patrick that Khalid will give license to Microsoft for mini-cloud patent if Microsoft is willing to pay reasonable royalty fee. Patrick declined that offer.

41. On July 9, 2015, Patrick told Khalid that he Patrick will put together an agreement if Khalid will agree to give Microsoft royalty free access to all present and future patents related to Mini-cloud systems in exchange of resolving all disputes. Khalid found this offer to be very unfair, anti-competitive, and thus Khalid declined this "resolve offer" given by Patrick.

42. In July, 2015, Patrick also clarified that Microsoft's claim would extend to mini-cloud patent family for past, present, and future patents that indirectly claim all the other patents in the Invention Disclosure documents.

43. On August 29, 2015, Khalid told Patrick and Shannon that Microsoft's claim to inventions is causing problems for Khalid to refile many patent applications related to the patent family listed in the Invention Disclosure. Microsoft did not respond to release its claim.

44. On May 27, 2016, Khalid received a letter ("M&G letter") from Microsoft outside counsel Andrew T. Pouzeshi at Merchant & Gold. The letter said, "You also agreed to provide a list identifying all inventions made by you or belonging to you prior to your employment with Microsoft. There is no evidence that you provided a list of inventions prior to either period of employment…your failure to exclude inventions described in the '219 and '637 patents resulted in a grant of an exclusive, royalty-free, irrevocable, worldwide license to those inventions to Microsoft.". Through the external counsel, for the first time in a signed letter,

COMPLAINT
KHALID v MICROSOFT
Page 11 of 30

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA 98052
(425) 445-7157

Microsoft officially denied that Khalid had ever provided a list of inventions made by him or belonging to him.

45.   Microsoft asserted Citrix Systems, Inc was a Microsoft vendor. Microsoft also said, "It is Microsoft's standard practice when entering into contract with vendors that Microsoft owns all of the intellectual property produced by the vendor and the vendor employees". Upon receipt of the M&G letter Khalid demanded Microsoft to send him Vendor Agreement but Microsoft refused to share with Khalid.

"Microsoft, in the M&G letter, told Plaintiff that until Khalid grant royalty free license to Microsoft to the 637 and the 219 patent, Khalid can't tell his investors that Microsoft has no interest in the patents.

## Microsoft Partner Citrix Systems, Inc.,

## Claimed 637 and 219 patents

46.   On September 25, 2011, Citrix Systems, Inc.("Citrix") claimed underlying patent application resulting in the 219 and the 637 patents and withheld plaintiff's severance money until Khalid assigned patent application to Citrix.

47.   On October 2, 2015, Khalid filed a suit against Citrix Systems, Inc.("Citrix") in King County Superior Court to clear cloud on title to 219 patent and 637 patent. Citrix is a Microsoft business partner and vendor. Citrix chose to dispute Khalid's ownership to the 219 and 637 patents since year 2011 by saying Khalid didn't disclose his patent work and so Citrix should have the right to Khalid patent with the employment contract Khalid had signed with Citrix.

COMPLAINT
KHALID v MICROSOFT
Page 12 of 30

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

Citrix did not prevail on their assertion. Citrix counter sued Khalid and Xencare on May 12, 2016 in federal courts to claim 219 and 637 patents.

48.  During the state court trial, around 2017, Citrix Systems claimed Microsoft was their partner and Citrix delayed the state court case to do additional discovery relying on the Microsoft M&G letter. Those delays resulted in increased cost and loss of time to Khalid.

49.  In 2017, Citrix sent a discovery request to Microsoft as part of the state court proceedings. Microsoft produced the 2011 Microsoft Employee Agreement without the exclusion list Khalid submitted to Microsoft on December 19, 2011.

50.   During the trial in July of 2018, Citrix chief architect Brad Petersen testified and suggested that Citrix wanted to protect its partner and suggested that Khalid's patent could have been hostile to those partners. Brad also testified that Citrix never sold anti-virus kind of products, an area 219 patent targeted to solve. Brad also testified that Citrix didn't sell any thin client products either. 637 patent included thin terminal similar to thin client.

51.  During the state court proceedings, around 2017, during communication with Khalid's counsel, Citrix counsel said that Citrix has a common interest with Microsoft to ensure that a patent doesn't get to patent troll. Citrix also testified that Citrix and Microsoft together held 70% market share in virtual desktop space.

52.  On July 16 through 31, 2018, at the state court trial, Khalid's experts, John Forbes and Lorraine Barrick, testified that the value of the software security business and the thin terminal business based on both the 219 and the 637 patent would have been around $27 million. Citrix showed the Microsoft M&G letter to the jury to undermine the damage.

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA 98052
(425) 445-7157

53.   On August 1, 2018, in a unanimous verdict, 12 King County jurors found that Citrix breached its agreement, Khalid didn't breach the same agreement by not assigning 219 patent and 637 patent to Citrix.  Subsequently, King County Court Judge entered a $5.8 million judgment against Citrix that included a $3 million Jury award, and $2.8 million to cover fees and costs. The Court also entered a declaratory judgment against Citrix that Citrix doesn't have any right to either the 219 or the 637 patent. The cost of litigation exceeded $2.8 million.

**Market Size of Technology  Covered  by Patents and Infringement**

54.   On or around July 21, 2017, Microsoft CEO Satya Nadella said in their financial reporting, "Our gaming business now is more than $9 billion and growing profitably – 2017". Considering Microsoft is not the only player, the overall market size is expected to total at least $400 billion in business over 20 years. A nominal 1% royalty would set the infringement value to $4 billion that Microsoft fraudulently tried to get access to.

55.   Microsoft Xbox One product infringes on claim 1, 4, and 20 of US patent 8,782,637 which is a violation of plaintiff's exclusive right protected under 35 USC § 271. The infringement is a direct using of all of the components in the 637 patent, or Xbox One uses components in an equivalent way that infringes on the 637 patent. The Microsoft infringement is willful, and Microsoft used fraud to claim the 637 patent right to avoid liability under infringement laws.

**Offshore Tax Engineering Scheme  to Avoid avoid Taxes**

56. In 2012, one US senate panel report said that from 2009 to 2011, Microsoft shifted $21 billion offshore, almost half of its U.S. retail sales revenue, saving up to $4.5 billion in taxes on goods sold in the United States. The report also said the software giant shifts royalty revenue to units in low-tax nations, such as Singapore and Ireland, avoiding billions of dollars of U.S. taxes. Those unfair practices eventually impact consumers.

57. In 2015, the New York Times and Bloomberg made reports based on leaked Panama papers that corporations had been using intellectual property rights as a vehicle to transfer money to offshore accounts to avoid income taxes in the form of tax engineering. In such a tax engineering scheme, corporations would transfer right to intellectual properties to an offshore entity often without any employee and then make a generous royalty payment to such an offshore account and enjoy low or no tax. Those leaked reports and public statements showed that Microsoft and its partner moved billions of dollars offshore.

58. By 2017, corporations have moved around $2.8 trillion dollars that should have been in the USA and tax revenue from them could have funded many public projects. If corporations develop their intellectual properties through extortion, illegal, unfair and grossly unethical practices, those tax engineering schemes would be unfair and illegal practices. Also, those corporations never disclosed to its employees that employees work towards intellectual properties would be used in such unfair tax engineering practices. With full disclosures, patriotic employees who are the actual owner of intellectual properties would not assigned their private right to corporations to associate themselves with such tax engineering scheme that deprive our nation as a whole and their own families of the tax supported programs and places of expectation for our tax dollars.

COMPLAINT
KHALID v MICROSOFT
Page 15 of 30

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA 98052
(425) 445-7157

59. Corporations used intellectual property to increase brand value/trademark and used the collection of intellectual property to make generous royalty payments to offshore accounts that held rights to intellectual property in order to receive royalty payments and to deceive the IRS and the US public.

**Microsoft Employee Patent Grabbing Scheme is**

**Injurious to the Employees Rights**

60. Microsoft Agreement section 5 award Microsoft "first right of refusal" to any employee patent even if the patent is not related to Microsoft business and protected under RCW 49.44.140. That section violates Washington Statute RCW 49.44.140 and similar statutes in other states.

61. The "first right of refusal" has value greater than Zero (0) and an employee losses that every day he remains under the contract. The right is in the form of an option, Microsoft can choose to exercise that option at Zero(0) exercise price at their own choosing. The option is more like a mining right to a piece of land owned by employee where the option has value even if it is  unknown if that land has any mineable materials.

62. The Microsoft Employee Agreement assigns right to an employee's future inventions during his employment at the time he signs the Employee Agreement. The agreement doesn't set any scope or boundary to such inventions. Microsoft don't have any inhouse objective standard, or review process, rather the company applies subjective financially motivated, anti-competitive practices.

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

63. Any right associated with a patent is a right protected by the Fourteenth Amendments of the United States Constitution. By not defining a clear boundary, Microsoft deprives its employee of   due process of law. Microsoft contaminates employee's future invention by creating cloud and uncertainty around the ownership and rights around the title to invention upon signing employee agreement. Microsoft drives the value of such inventions to Zero(0) or negative dollar by demanding free license where employee would bear all expenses to maintain patent family

64. Microsoft by claiming any of Plaintiff's patent rights, claimed some service plaintiff rendered for himself and his start-up that plaintiff would never render for any employer voluntarily. Plaintiff's such service covered thousands of hours of work he added in his patents in terms of development and prosecution of patents that by no means falls under the term of Microsoft Employee Agreement.

65. The Microsoft Employee Agreement, Section 5 and Section 6, are designed to get free labor from employees and those employees would be working without knowing that Microsoft would or could claim and benefit from this free labor.

66. Microsoft's use of the exclusion list under Section 6, either destroying the employee's submitted list, as in this Khalid's instant, and perhaps an unknown number of other employee's, or refusing to acknowledge its existence, as this situation has shown, is designed to contaminate an employee's patent that effectively transfers free labor to Microsoft that the employee would never render to Microsoft voluntarily.

67. Once Microsoft successfully contaminates an employee's patent, as in the instant case, that employee would need tremendous financial resources to clear their patent right through

COMPLAINT
KHALID v MICROSOFT
Page 17 of 30

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA 98052
(425) 445-7157

court. An ordinary employee can't afford the time or the legal costs to pursue and challenge a company on the legal court front, nor should anyone be forced to challenge deception ever, and though in the face of such deception, an ordinary employee is forced to share his already given free labor with Microsoft, unwillingly.

68. Microsoft asked Plaintiff to sign Employment Agreement on December19, 2011. Plaintiff started getting a salary from Microsoft on January 9, 2012. Microsoft later said the Employee Agreement was in force from December19, 2011, not from January 9, 2012, therefore the agreement transferred all inventive services to Microsoft from December 19, 2011. Microsoft didn't pay for 3 weeks of services, but claimed inventive service in an attempt to retain free labor, first right of refusal to employee patent, and assignment right to invention for that 3 weeks window.

69. Microsoft has a systematic scheme, where Microsoft would maliciously take financial advantage of its employees, and will engage its multiple employees in employment opportunities, while conspiring to claim and then profit from an employee's patent, an act that deprives the employee from rights he or she is protected by in both the Thirteenth and Fourteenth Amendments of the United State's Constitution.

70. An ordinary employee can't afford hundreds of thousands of dollars in costs to protect his right through litigation, and he or she can't afford to abandon his patent work because that would be total destruction of his personal property. Rather, he would find him or herself in an unknowing and surprising trap of financial and property submittal to Defendant to share the fruit of his labor that he would never offer free of cost willingly; this equates to involuntary servitude under Thirteenth Amendments. And Microsoft is violating the

COMPLAINT
KHALID v MICROSOFT
Page 18 of 30

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

Fourteenth Amendment right by transferring employee patent right without due process of law. Microsoft doesn't offer any additional compensation for transferring such patent right. Microsoft violation is continuing violation. Because of Microsoft violation, Plaintiff was deprived of enjoyment of his patent right, Plaintiff couldn't use his labor time and efforts for his intended purpose that he rendered for himself.

71.  Microsoft conducts a few billion dollars of business with both the federal and local governments every year.

72.  On January 30, 2009, in an email to Cnet News in responding to Microsoft v Miki lawsuit, where Microsoft asserted Miki didn't disclose his patent to Microsoft before employment, Miki Mullor said that he had informed Microsoft about his patent in his resume and employment agreement. Miki backed his statement, and this shows Microsoft assertion in M&G letter that Khalid didn't disclose his inventions is not the first of such statements from Microsoft that show either irreparable and costly neglect in Microsoft's applicant/new employee document bookkeeping, or show a blatant cover-up of a conspiracy to steal intellectual property and labor time from their employees. .

73.  On January 30, 2009, Miki Mullor further wrote to Cnet, "Microsoft's complaint against me in Washington is a shameful and a desperate attempt to put pressure on me and my family from continuing to pursue our legal rights in the federal court in Los Angeles". Miki's filed patent infringement lawsuit against Microsoft partner Dell, HP and Toshiba in Federal Court in Los Angeles.

74.  Microsoft maintained its pressure scheme on Miki Mullor until the end of 2009 when Miki settled with Microsoft on the patent issue under undisclosed terms. Microsoft, by using its

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

M&G letter in 2016, tried to achieve a similar result where Microsoft partner Citrix System tried to use this same Microsoft assertion written in that letter to hurt Khalid's damages claims against Citrix and win on an argument that either Microsoft or Citrix owns 219 and 637 patents.

## Class Certification

75. Thousands of employees signed Employee Agreement with Microsoft where those contracts transferred valuable employee rights to Microsoft violating local and federal law. Those employees' rights had had been injured and they together form a class.

76. Members in the class would have one or more of the following attributes a) they have signed employee agreement with Microsoft b) The agreement was a form agreement with an ambiguous and over broad patent assignment provision that would transfer patent right upon signing c) member would sign the employee agreement at a date earlier than their job start date, however doesn't receive salary from the signing date d) Member was either told or understood that they must sign the employee agreement as a condition to their job.

77. Class members had been either seriously exposed to, or had been damaged by the wrongful patent grabbing scheme explained earlier. Such scheme injured the class member's constitutional rights and other forms of rights provided by local, state and/or common law.

78. Damages of the class members are more than $5 million, and there are more than 100 class members who signed Employee Agreements with Microsoft.

79. Plaintiff Khalid has been personally injured and want to represent the whole class if certified.

## Damages

80. The plaintiffs suffered damages caused and proximately caused by the actions of the Defendant as set forth below.

## III.    VIOLATION ALLEGED

**(Count I - Microsoft Violated WA Consumer Protection Act under RCW 19.86.020)**

81. Plaintiff hereby incorporates paragraphs 1 through 80.

82. Microsoft's use the Employee Agreement and Microsoft's practice to claim an employee's patent is an unfair and deceptive practice under RCW 19.86.020.

83. Microsoft practice to destroy, conceal or withhold employee invention disclosure to intimidate or extort an employee to gain access to an employee's patent is an unfair method of doing business, it is both an unfair and a deceptive practice.

84. Microsoft claimed rights to Khalid's patents as a free license where Microsoft didn't invest a penny, however Khalid invested thousands of both time and dollars of his own; Microsoft's practice is unfair.

85. Microsoft claimed inventive service from Khalid from Dec 19, 2011, using the Employee Agreement employee agreement, however, Microsoft started paying Khalid from January-9, 2012. The practice is unfair.

86. Microsoft's practice to claim an employee's invention from a date earlier than the employee's actual paid start date at the workplace, a salary pay start date   after a claim to

COMPLAINT
KHALID v MICROSOFT
Page 21 of 30

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

an employee's invention is an unfair method of doing business and/or both an unfair and deceptive practice.

87. Microsoft's violation of  Washington statute and federal statute of record keeping of employee documents, and infringements on constitutional rights  is an unfair practice.

88. There exists a public  interest  embedded in patent rights. Abusing patent rights is injurious to the public. Also, because Microsoft uses the same employee agreement with many employees, those employees have been damaged or exposed to Microsoft's unfair practices that can and likely have damaged those many employees the same way it has damaged the Plaintiff.

89. Section 5 and section 6 of the Microsoft Employment Agreement  grants free access to patents that RCW 49.44.140 protects. The provision also violates  Washington State's public policy under RCW 49.44.140. The practice is an unfair and/or deceptive method of doing business.

90. Multiples of employees having this Employment Agreement with Microsoft means many might have been injured or might be injured in the similar way Khalid has  been injured. Microsoft's practice is injurious to the public.


**(Count II - Microsoft Violated WA Consumer Protection Act under RCW 19.86.030)**

91. Plaintiff hereby incorporates paragraphs 1 through 80 and paragraphs 82 through 90.

92. The Microsoft Employment Agreement is a contract.  It is more restrictive than necessary and a restraint of trade in Washington because Microsoft interpreted its contract in such a

way as that it owns or gets access to any employee's patent, that without such discretionary interpretation of their contract Microsoft would not legally get to have or use that employee's patent.

93. Section 5 and section 6 of Microsoft's contract is overbroad and a restraint of trade.

94. Defendant(s) claimed plaintiff patent on bad faith. An assertion of rights to intellectual property that is on bad faith and/or based on fraud is a restraint of trade.

95. Microsoft and employees form a combination force where the Microsoft force intimidates inventive employees to give up patent rights; that is a restraint of trade under RCW 19.86.030.

96. The Employment Agreement  tied up together two separate agreements a) confidentiality agreement b) patent assignment agreement of future inventions. Plaintiff had to sign both as part of the Employment. This tying is anti-competitive and a restraint of trade because the assignment of future invention is ambiguous, overbroad, violated local and federal law.

**(Count III – Defendant Breached Employee Agreement with Plaintiff)**

97. Plaintiff hereby incorporates paragraphs 1 through 80.

98. Khalid submitted an exclusion list under section 6 of Employee Agreement. By claiming that Khalid didn't submit exclusion and subsequently by claiming 219 patents and 637 patents Microsoft breach the Employee Agreement.

99. Microsoft promised Khalid with explicit terms that Microsoft would not claim patent in the exclusion list or that meets section 5 criteria. Microsoft breached that promise.

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

**(Count IV – Defendant Breached a Duty of Good Faith and Fair Dealing Under Employee Contract)**

100.  Plaintiff(s) hereby incorporates paragraphs 1 through 80.

101.  The duty of good faith and fair dealing arises when one party has discretionary authority to determine a future contract term. Here, Microsoft asked Plaintiff Khalid to submit a patent exclusion list to his Microsoft recruiter. Upon receipt of the list, Microsoft acknowledged, Microsoft had full control over how to preserve/control those records. Microsoft violated a duty of good faith and fair dealing by claiming that the exclusion list Plaintiff Khalid submitted didn't exist, this resulted in Microsoft claiming an entitlement   to get a royalty-free license to patent(s) listed in the mismanaged exclusion list.

**(Count V – Microsoft Tortious Interference with Business )**

102.  Plaintiff hereby incorporates paragraphs 1 through 80.

103.  Microsoft caused unlawful business interference by clouding the title of patents 219 and 637 in 2015 when Khalid was trying to create an IP incubation and licensing his start-up.

104.  Microsoft caused unlawful business interference where Khalid couldn't make progress on his intended business, this inability to make progress was as a direct result of Microsoft unlawful claim to the named patent(s).

**(Count VI – Microsoft Committed Tort Impacting Full Damage Recovery )**

105. Plaintiff hereby incorporates paragraphs 1 through 80.

106. Microsoft issued M&G letter 2 weeks after Microsoft partner Citrix filed a counter suit against Plaintiff(s) on the same patents. The M&G letter negatively impacted the full recovery of $27 million from Microsoft partner.

107. Microsoft added false information in M&G letter that Microsoft partner used to undermine Khalid's recovery of damage Khalid's litigation with Citrix. Microsoft action damaged Plaintiff(s).


**(Count VII - Microsoft Violated WA Minimum Wage Act)**

108.  Plaintiff hereby incorporates paragraphs 1 through 80.

109. Defendant Microsoft didn't pay wages and/or benefits for inventive services between the signing the Employment Agreement  and the starting of the job, from December 19, 2011, through January-8, 2012, 21 days . Also, after termination, Microsoft delayed in processing and paying Plaintiff Khalid  for two weeks of vacation pay. The delay ( 6) month delay, and without citing any reason. Microsoft violated Washington's   Minimum Age Act.

**(Count VIII – Fraudulent Inducement to Contract)**

110. Plaintiff(s) hereby incorporates paragraphs 1 through 80.

111. Microsoft told in writing that Plaintiff Khalid can safely send exclusion list to his recruiter, upon that confirmation, Plaintiff Khalid signed the Employee Contract.

112. Later Microsoft denied Khalid ever submitted the exclusion list and demanded a royalty-free license to Plaintiff Khalid's patent(s). Had Microsoft told Khalid this at the beginning, that Microsoft was  going to do what it did, Plaintiff Khalid would never have signed the contract

COMPLAINT
KHALID v MICROSOFT
Page 25 of 30

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond. WA  98052
(425) 445-7157

with Microsoft. Microsoft fraudulently induced Plaintiff Khalid into the Microsoft employee contract.

113. Because of the inducement, Khalid go in to contract that restricted Plaintiff(s) to recover damages from Microsoft partners and incur damages in business.

**(Count IX - Microsoft Inflicted Discomfort and Inconvenience by Interfering with Plaintiff's Business Property Right)**

114. Plaintiff hereby incorporates paragraphs 1 through 80.

115. Microsoft by making false claims in the M&G letter and with various Email communications clouded Plaintiff(s) patent tile and increased uncertainty on any business around those patents. Those false claims negatively affected the reputation of patent title.

116. Defendant Microsoft intentionally interfered with plaintiff's business property right that caused enormous inconvenience and discomfort to plaintiff that is recoverable under Cherberg v. Peoples Nat'l Bank, 564 P. 2d 1137 - Wash: Supreme Court 1977 and common law and related statute.

**(Count X - Defendant Violated WA Racketeering Act through Extortion)**

117. Plaintiff hereby incorporates paragraphs 1 through 80.

118. Defendant Microsoft used  overbroad employee agreement.,  It is ongoing; the overbroad Employee Agreement and uses of that overbroad Agreement by Microsoft equate to fraud and extortion to claim  employee patents.

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

119. Microsoft employed at least 3 employees (two recruiters who contacted Plaintiff Khalid initially, and Microsoft patent attorney Patrick Evans) to conduct its patent grabbing scheme; that is a violation under RCW 9A.82.060. Plaintiff had interaction with at least 3 people employed by Microsoft in connection with extortion under RCW 9A.56.130. Plaintiff is entitled to the remedy under RCW 9A.82.100(4)(d).

120. Microsoft employed this patent grabbing scheme in at least 3 employee agreements, at least one of them is ongoing and open-ended.

121. Microsoft lead the pattern of racketeering activities with its partners to grab employees patent that significantly benefited them or designed to benefit them.

122. Microsoft's practice related to employee patents, patent exclusion list, are unfair and deceptive a violation of  RCW 19.86.020. Part of Microsoft's scheme was done over email, this constitutes email fraud.

**(Count XI – Declaratory Relief that Microsoft Does Not  Own the 219 and the 637 Patent)**

123. Plaintiff(s) hereby incorporates paragraphs 1 through 80.

124. The Microsoft Employment Agreement, a contract, is not enforceable to Plaintiff's 219 and 637 patents.

125. Microsoft does not own Plaintiff's 219 and 637 patents.

126. Microsoft does not have any  right to Plaintiff's 219 and 637 patents.

**(Count XII – Violated Interest of Class Members Right)**

COMPLAINT
KHALID v MICROSOFT
Page 27 of 30

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

127. Plaintiff hereby incorporates paragraphs 1 through 80.

128. All of the employees  who have signed an Employee Agreement with Defendant's, as described and incorporated here within, are together as a class for the purpose of class action.

129. Microsoft doesn't pay wages from the signing date of the Employee Agreement, yet  uses inventing services from the signing date of the Employee Agreement.

130. Microsoft retains right to any future invention of an employee in the form of first right of refusal that depletes the value of employee's future invention(s).

131. Microsoft's use of ambiguous provisions in an employee agreement is a violation of the notice provision of the due process of law afforded as a right under the Fourteenth Amendment of the United State's Constitution, violations of just compensation. Microsoft's attempt to contaminate employee's inventions is an attempt to get free labor that the employee would never render freely to Microsoft, there being is a violation of Involuntary Servitude under Thirteenth Amendments.

132. Microsoft's Employee Agreement(s) of such described, violated the Sherman Act  and the Racketeering Act injuring employees' rights.

133. Microsoft inflicted moral injury to the class members by using their intellectual property for offshore tax engineering scheme and not disclosing that to employees.

134. Class certification is needed to recover damages sustained by class members.

**(Count XIII – Reserving Right to Add New Claim or Amending Claims)**

135. Plaintiff(s) hereby incorporates paragraphs 1 through 80.

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

136. Plaintiffs(s) are reserving the right to add new claims and/or to amend any claims in this complaint as the law permits.

# IV.   REQUESTED RELIEF

WHEREFORE, plaintiffs pray for relief as follows:

137. Certify this action for Class Action  under Washing Court Rule CR 23 so that other employees affected by the Defendant(s)'s behavior can join this lawsuit and recover damages along with Plaintiff for the requested relief.

138. Civil remedies under RCW 19.86.090 and RCW 9A.82.100(4)(d) including treble damage, cost, and fees.

139. Damages for fraud or attempted fraud in the amount of actual or probable loss.

140. Damages for back pay, front pay, lost benefits, in an amount to be proven at trial.

141. Damages for loss of patents, and damages for loss of profit in businesses in an amount to be proven at trial. Damages to Startup Company in an amount to be proven at trial.

142. Damages for emotional distress, loss of enjoyment of life, humiliation.

143. personal indignity, embarrassment, fear, anxiety, and/or anguish.

144. Injunctive relief and declaratory judgment in Plaintiff's favor.

145. Prejudgment interest in an amount to be proven at trial.

146. Double Damage under RCW 49.52.070 for wage violation including costs and fees.

147. Compensation for the tax penalty associated with any recovery.

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

148. Costs and legal fees pursuant to RCW 59.18, RCW 49.48.030, and RCW 4.84 or other rules of law and/or equity.

149. Civil penalty under RCW19.86.140.

150. Plaintiff is also looking for protection under the whistleblower laws and/or similar laws so that Defendant(s) can't harass Plaintiff; Plaintiff has a right to the whistleblowing protections and other protections available by law when he notifies various  multiple agencies  to investigate systematic unlawful violations by Microsoft.

151. Penalty for inconvenience and discomfort as authorized under Cherberg v. Peoples Nat'l Bank, 564 P. 2d 1137 - Wash: Supreme Court 1977.

152. Whatever further and additional relief the court shall deem just and equitable.


## V.     DEMAND FOR JURY


Plaintiff(s) hereby demands that this case is tried before TWELVE  jury.


**SIGNED and DATED** this __28th__ day of January 29, 2019.

Plaintiff Pro Se
ATM Shafiqul Khalid
17446 NE 28th ST
Redmond, WA 98052
(425) 445 7157
atmkhalid@gmail.com

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

# EXHIBIT B

ØŠÒÖ

ŒŒHÁUXÁHŒŒHŒGÁUT
SŒŠÖÁUWÞVÝ
ÙWUÖÜ⁀Ü⁀UWÜVÑŠÒÜS
Ò⁀ŠÒÖ
ÔŒÜÒÄÄ⁀JŒŒGÏííŒÄÜÒœ

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
COUNTY OF KING

| | |
|---|---|
| ATM SHAFIQUL KHALID, an individual and on behalf of similarly situated, Xencare Software, Inc. | **No.  19-2-02755-0 SEA** |
| Plaintiff(s), | **PLAINTIFF KHALID'S SECOND AMENDED COMPLAINT** |
| vs. | |
| MICROSOFT CORPORATION, a Washington Corporation, One Redmond Way, Redmond, Washington | |
| Defendant(s). | |

COMES NOW the plaintiff, ATM Shafiqul Khalid ("Khalid"), and Xencare Software, Inc. ("Xencare") together referred as "Plaintiff" or "Plaintiffs" for a cause of action against Defendant Microsoft Corporation, ("Microsoft"), as "Defendant(s)", state and allege as follows:

## I.    JURISDICTION AND VENUE

1.      The plaintiff, ATM Shafiqul Khalid (hereinafter referred to as "Plaintiff" and by his last name "Khalid"), is a citizen of King County, Washington.

2.      The defendant, Microsoft Corporation, (hereinafter referred to as "Microsoft" or "Defendant(s)"), is a Washington corporation doing business in Washington. Microsoft has its

SECOND AMENDED COMPLAINT
KHALID v MICROSOFT
Page 1 of 24

LOWE GRAHAM JONES℠

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

physical office to conduct business in King County, Washington, where Plaintiff worked for three (3) years during 2012-2015 and for 8 years during 1998-2006.

3.      This court has jurisdiction over the subject matter and personal jurisdiction over the Defendant pursuant to RCW 4.28.185(1)(a)-(c) and because the Employee Agreement was entered into in Washington state.

4.      Venue is proper pursuant to RCW 4.12.020, RCW 4.12.025 as most of the events giving rise to the complaint occurred in King County, Washington.

5.      All the claims rise from a) dispute over written contract with a six (6) year of statuary limitation pursuant to RCW 4.16.040(1), and b) violation of Washington Consumer Protection ACT that has a four (4) year statuary limitation pursuant to RCW 19.86.120.

## II.      FACTS

### Background

6.      Microsoft Corporation (commonly referred to as Microsoft) is an American multinational technology company headquartered in Redmond, Washington, that develops, manufactures, licenses, supports and sells computer software, consumer electronics and personal computers and services. In 2018, Microsoft reported $110 billion revenue 134,000 employees worldwide with around 47,000 employees in Washington alone. Its best-known software products are the Microsoft Windows line of operating systems, Microsoft Office suite, and Internet Explorer web browser. Its flagship hardware products are the Xbox game consoles and the Microsoft Surface tablet lineup. It is the world's largest software maker measured by revenues. It is also one of the world's most valuable companies. Microsoft was founded by Bill Gates and Paul Allen on April 4, 1975, to develop and sell BASIC interpreters for Altair 8800. It rose to dominate the personal

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

computer operating system market with MS-DOS in the mid-1980s, followed by Microsoft Windows. Microsoft also conducts a patent licensing business through Microsoft Technology Licensing, LLC.

7.      Plaintiff Khalid is a very creative engineer. Before joining Microsoft, Plaintiff published 14 research papers in journal and conference proceedings. Plaintiff had been named inventor in 20 patents issued by United States Patent and Trademark Office ("USPTO"), and European Patent Office ("EPO"). To exercise his creativity and intellectual capacity, Plaintiff has always maintained his own creative projects in various areas. Plaintiff is an expert in the area of Computer software, Operating Systems, Cloud and virtualization with 20+ years of experience.

8.      On December 16, 2011, Microsoft offered ATM Shafiqul Khalid a job as Senior Program Manager in Microsoft Bing division. Microsoft recruiter Shannon Carlsen asked Khalid to sign a Microsoft Corporation Employee Agreement ("Employee Agreement"). Before signing the Employee Agreement, Khalid wanted to attach an Invention Disclosure list under section 6 of the Microsoft Employee Agreement, but there was not a way to attach such a list online. The Microsoft employee agreement had a line "If you wish to attach a list of inventions, per paragraph 6, below, please contact your recruiter." Khalid contacted Shannon Carlsen as required by the agreement.

9.      Microsoft Employee Agreement section 5 contained, "as to any Invention complying with 5(a)-(c) above that results in any product, service or development with potential commercial application, MICROSOFT shall be given the right of first refusal to obtain exclusive rights to the Invention and such product, service or development." The invention referenced here was an invention solely owned by employee Khalid and his startup.

LOWE GRAHAM JONES℠

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

10.     Section 6 of this employee agreement contained, "I have attached a list describing all Inventions belonging to me and made by me prior to my employment with MICROSOFT that I wish to have excluded from this Agreement. If no such list is attached, I represent that there are no such Inventions."

11.     On December 19, 2011, Khalid sent an email to Shannon Carlsen attaching an Invention disclosure list per instruction from Shannon. Khalid signed the Employee Agreement. Later Shannon Carlsen acknowledged that she had received the invention disclosure list as attachment. Shannon copied that email to recruiting coordinator Ricardo Bustamante. Khalid was given no further instructions on this invention disclosure list.

12.     On January 9, 2012, Khalid participated in a Microsoft employee orientation program where Khalid was required to sign a hard copy of the employee agreement using INK. Khalid again submitted an Invention disclosure list and left a hand-written note on the Employee Agreement to show there were additional pages.

13.     The invention disclosure list Khalid submitted on December 19, 2011, had nine (9) patentable items with short descriptions of each invention. Khalid also marked a few items as pending patent applications with United States Patent and Trademark Office.

14.     On July 15, 2014, the United States Patent and Trademark Office issued US patent 8,782,637 (hereinafter referred to as "mini-cloud patent") that Khalid listed in the Invention Disclosure document on December19, 2011.

15.     As part of Microsoft job application Khalid submitted a resume. The resume had an embedded link on pending patents in its summary section. The list would have shown the publication of the mini-cloud patent application on December 12, 2011.

LOWE GRAHAM JONES
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

16.     After signing the Microsoft employee agreement on December 19, 2011, Plaintiff worked for Microsoft from January 9, 2011, until February 2, 2015, at Microsoft's offices in Bellevue and Redmond, Washington. Plaintiff also worked for Microsoft during the years of 1998-2006. Between December 19, 2011, and January 9, 2012, Khalid had to participate in a background check including filling out forms, reviewing materials relevant to the Microsoft role and chatting with the Microsoft hiring manager on job related matters to warm-up for the role. Disregarding the dates, Microsoft claimed inventive service from December 19, 2011, under the Employee Agreement.

17.     On May 27, 2016, as explained in more details later, Microsoft notified Khalid through its external counsel that no exclusion list existed, Microsoft claimed rights to patents Khalid had listed in the disclosure list, and that Khalid needed to give Microsoft a royalty free license to clear the patent dispute.

18.     Microsoft has approximately an 88% market share in desktop operating system. Microsoft has approximately an 88% market share in the office productivity suit market such as Microsoft Office suites that often are delivered as cloud services through programs including Office365. Microsoft also has a significant market share in the Gaming space.

**Development of**

**8,286,219,  8,782,637 and 10,846,118 Patents**

19.     While in graduate school, during 1996-1997 Plaintiff invented the idea for a subscription that would allow a user to consume software without driving to the store to buy it. During 1997, Plaintiff did some work on this subscription idea in a very rudimentary form. Plaintiff continued

LOWE GRAHAM JONES PLLC
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

his work for years through 2010 when the idea evolved and transformed into mini-cloud subscription that would allow a user to consume computing resources and content on demand, integrating parts of the subscription idea Plaintiff had in 1996. Plaintiff had one patent application filed in 2001 for software subscription and another in 2007 to cover content subscription including digital movies. The idea evolved to form cloud computing for residential users using mini-cloud host and thin terminals. The US Patent office issued patent 8,782,637 (the "'637 patent") in 2014. Plaintiff had a total of 30 ideas in the form of patent applications or in the development stage. To date, in spite of any adverse situation, Plaintiff has continued adding his labor to refine and prosecute patent applications through US patent office building on those ideas.

20.     The mini-cloud '637 patent comprises several components: a) thin terminal something like Roku stick that can stick to any monitor then connect to b) subscription provider in the cloud and c) connect to a mini-cloud host device to deliver computing resources with specific integration techniques outlined in the patent. Microsoft Xbox One uses all components of 637 patents or mini-cloud invention. The invention is expected to reduce consumer cloud subscription cost by device consolidation.

21.     Around 2005, Plaintiff, while working with his friends and partner, made an invention to protect computer systems from viruses and spyware. Plaintiff filed a patent application in 2005 titled "SAFE AND SECURE PROGRAM EXECUTION FRAMEWORK." The application expired in 2006.

22.     On February 16, 2008, after months of efforts to commercialize the subject matter of the expired patent application on security, and after some validation and improvement with a "single

LOWE GRAHAM JONES℠

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

system framework," Plaintiff's startup team filed the 2005 patent application with the improved version titled "SAFE AND SECURE PROGRAM EXECUTION FRAMEWORK" with application number 12/032,663.

23.     On October 9, 2012, the US patent office issued Patent 8,286,219 (the "'219 Patent") for the application number 12/032,663.

24.     On November 24, 2020, the US patent office issued Patent 10,846,188 (the "'118 Patent"), a continuation of the '637 Patent, for application number 15/391,819.

25.     All those years, Khalid recruited a team of engineers to incubate and productize both security and mini-cloud technologies. Khalid and his team of around 20 people invested more than 30,000 engineering hours over the years with the equivalent of at least $3.5 million investment in the value of the labor. Khalid and his counsel also recently spent $2 million to clear claims which one of Microsoft's partners made on the '219 and the '637 patent.

26.     Defendant's mini-cloud patent was developed to host and deliver any digital services through cheap terminals in a cost-effective way that makes the cloud services affordable to an ordinary residential user. And the security patent was developed to protect the host like systems.

27.     Khalid founded Xencare Software, Inc., and owns a majority share in Xencare. Xencare delegated certain rights to Khalid.

**Micro-Data Center Incubation IP Licensing  Efforts**

28.     By the year 2014, thin devices with a form factor similar to the "mini-cloud thin terminal" were developed by various companies including Roku, Amazon FireTV stick, etc. Those devices are so popular that today more than half of US households use one of those devices. Plaintiff decided to incubate further ideas using the mini-cloud host component with a business model

LOWE GRAHAM JONES

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

called Micro-Data Center that can work as a single device or form a mega data center distributed inside a City. Plaintiff was planning to form an IP licensing business and incubator to further develop these ideas.

29.     On or around February 12, 2013, Plaintiff also had a discussion with Microsoft Vice President VP Amit Mittal on the mini-cloud invention. Amit later told Khalid that he had a discussion within Microsoft and wouldn't pursue the idea.

30.     In March 2014, Plaintiff had a meeting with Microsoft Executive Vice President (EVP) Kirill Tatarinov reporting to Microsoft CEO Satya Nadella. Plaintiff discussed the mini-cloud invention in detail. Kirill advised Khalid to talk to Stephen Elop who was planning to join Microsoft as part of Microsoft Nokia acquisition. Stephen Elop was designated to head a Microsoft device division that included Xbox One.

31.     On June 30, 2014, Plaintiff sent an email to Stephen Elop, Microsoft EVP reporting to Satya Nadella, Microsoft CEO. The email included Satya Nadella, Brad Smith, Microsoft General Counsel, and a few executives. In the email, Plaintiff proposed a business model based on the mini-cloud invention. On July 1, 2014, Stephen Elop declined Khalid's proposal.

32.     In 2015, after being terminated by Microsoft, Plaintiff put in effort to incubate and form a business, or license developed technologies to others. Plaintiff shared his proposal with Microsoft as well. Plaintiff needed funds from investors to pursue this business model.

33.     Plaintiff discussed part of software subscription with Bob Rinne, Khalid's manager at Microsoft, around the year 2000. Microsoft declined Plaintiff's idea.

34.     After leaving Microsoft on February 2, 2015, Plaintiff was trying to accumulate resources to form an IP licensing and/or incubation business. Khalid had around 30 inventions in the

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

pipeline to protect the micro-data center space to solve consumer problems in a market generating about $70 billion/year. Khalid wrote a proposal and shared the proposal with Microsoft as well.

35.    Plaintiff planned to g license his patent to a party in an attempt to build his patent portfolio and move onto incubation. When parties learned that Microsoft demanded a free license to the present and future patent family, investors were deterred from investing making it impossible for Khalid to financially support work on his 30-patent portfolio and micro-data center ideas.

**Microsoft Claims Khalid's Patents in 2015**

36.    On February 19, 2015, Patrick Evans, Microsoft inhouse patent attorney wrote to Khalid noting that "[a]s per the Microsoft Corporation Employee Agreement you executed on December 19, 2011, Section 5 sets forth your obligations to assign intellectual property to Microsoft. Section 6 addresses inventions to be excluded, and no inventions were listed by you for exclusion." On the same date Khalid notified Patrick that Khalid had submitted an exclusion list.

37.    On March 3, 2015, Patrick Evan wrote to Khalid that "...[a]s per the employment agreement, Microsoft retains an assignment right in the patents. Please let me know if you need anything more" referring to US patent 8,782,637 and 8,286,219, sending a link to a form http://www.uspto.gov/forms/pto1595.pdf."  This form is used to transfer patent title and right from one party to another. In this case, Patrick wanted Khalid to transfer his patent right to Microsoft.

38.    On March 13, 2015, Khalid told Patrick Evan that Khalid submitted a copy of his original 2011 invention disclosure list.

LOWE GRAHAM JONES℠

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

39.     On April 14, 2015, Khalid requested Patrick check the hand-signed (using INK) employee agreement that Khalid signed on January 9, 2012. Khalid also requested a copy of the hand-signed employee agreement be sent to him. On April 16, 2015, Khalid reiterated his request for Shannon Flynn to have a copy of the INK signed Employee document sent to him. On April 27, 2015, Khalid notified Patrick that Khalid had not received the INK signed copy of the 2012 Employee Agreement.

40.     In 2015, Khalid provided Microsoft with a copy of the acknowledgment email Microsoft sent to Khalid in 2011 showing Microsoft received Khalid's Patent disclosure list. Microsoft knew Khalid's patent was published before Khalid joined Microsoft. Microsoft did not do anything to verify if Khalid's email record was authentic. Microsoft didn't preserve the recruiter's email but asked its employees to send an exclusion list to the recruiter. Microsoft by mistake or otherwise, deleted the recruiter's email box and later claimed the employee did not submit patent disclosure, then subsequently claimed ownership of the employee patent.

41.     On June 15, 2015, Khalid notified Patrick viaemail that Microsoft Xbox One is infringing on Khalid's mini-cloud patent US 8,782,637, and asked Patrick if there was any other way to resolve the dispute.

42.     On June 22, 2015, Khalid told Patrick via email that Khalid will give one security patent to Microsoft if Microsoft pay the build out cost for that patent. Khalid also told Patrick that Khalid will give license to Microsoft for mini-cloud patent if Microsoft is willing to pay a reasonable royalty fee. Patrick declined that offer.

43.     On July 9, 2015, Patrick told Khalid that Patrick will put together an agreement if Khalid will agree to give Microsoft royalty free access to all present and future patents related to Mini-

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

cloud systems, which would now include the '118 Patent, in exchange for resolving all disputes. Khalid found this offer to be very unfair, anti-competitive, and thus Khalid declined this "resolve offer" given by Patrick.

44.     In July 2015, Patrick also clarified that Microsoft's claim would extend to the mini-cloud patent family including past, present, and future patents that indirectly claim the other patents in the Invention Disclosure document.

45.     On August 29, 2015, Khalid told Patrick and Shannon that Microsoft's claim to inventions is interfering with his ability to refile many patent applications related to the patent family listed in the Invention Disclosure. Microsoft did not respond to release its claim.

46.     On May 27, 2016, Khalid received a letter ("M&G letter") from Microsoft outside counsel Andrew T. Pouzeshi at Merchant & Gold. The letter said, "[y]ou also agreed to provide a list identifying all inventions made by you or belonging to you prior to your employment with Microsoft. There is no evidence that you provided a list of inventions prior to either period of employment…your failure to exclude inventions described in the '219 and '637 patents resulted in a grant of an exclusive, royalty-free, irrevocable, worldwide license to those inventions to Microsoft." Through the external counsel, for the first time in a signed letter, Microsoft officially denied that Khalid had ever provided a list of inventions made by him or belonging to him.

47.     Microsoft asserted Citrix Systems, Inc was a Microsoft vendor. Microsoft also said, "[i]t is Microsoft's standard practice when entering into contract with vendors that Microsoft owns all of the intellectual property produced by the vendor and the vendor employees." Upon receipt of the M&G letter Khalid demanded Microsoft to send him a copy of the Vendor Agreement but Microsoft refused to share a copy with Khalid. On information or belief, the Microsoft/Citrix

SECOND AMENDED COMPLAINT
KHALID v MICROSOFT
Page 11 of 24

LOWE GRAHAM JONES℠

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

licensing agreement alleged to cover any intellectual property Khalid produced while an employee of Citrix either does not exist or was entered into for the express purpose of requiring Khalid to grant Microsoft a royalty free license as a condition of any settlement with Citrix.

In the M&G letter, Microsoft also told Plaintiff that until Khalid granted a royalty free license to Microsoft to the '637 and the '219 patent, Khalid can't tell his investors that Microsoft has no interest in the patents.

### Microsoft Partner Citrix Systems, Inc.,
### Claimed '637 and '219 Patents

48.     On September 25, 2011, Citrix Systems, Inc.("Citrix") claimed underlying patent application resulting in the '219 and the '637 patents and withheld Plaintiff's severance until Khalid assigned the patent application to Citrix.

49.     On October 2, 2015, Khalid filed a suit against Citrix Systems, Inc.("Citrix") in King County Superior Court to clear cloud on title to the '219 patent and the '637 patent. Citrix is a Microsoft business partner and vendor. Citrix chose to dispute Khalid's ownership to the '219 and the '637 patents since the year 2011 by claiming Khalid didn't disclose his patent work and Citrix should have the right to Khalid patent under the employment contract Khalid had signed with Citrix. Citrix did not prevail on their assertion. Citrix counter sued Khalid and Xencare on May 12, 2016 in federal courts claiming the '219 and the '637 patents.

50.     During the state court trial, around 2017, Citrix Systems claimed Microsoft was their partner and Citrix delayed the state court case to do additional discovery relying on the Microsoft M&G letter. Those delays resulted in increased cost and loss of time to Khalid.

LOWE GRAHAM JONES
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

51.     In 2017, Citrix sent a discovery request to Microsoft as part of the state court proceedings. Microsoft produced the 2011 Microsoft Employee Agreement without the exclusion list Khalid submitted to Microsoft on December 19, 2011.

52.     During the trial in July of 2018, Citrix chief architect Brad Petersen testified and suggested that Citrix wanted to protect its partner and suggested that Khalid's patent could have been hostile to those partners. Brad also testified that Citrix never sold anti-virus products, an area the '219 patent targeted to solve. Brad also testified that Citrix didn't sell any thin client products either. The '637 patent included claims related to a thin terminal similar to a thin client.

53.     During the state court proceedings, around 2017, during communication with Khalid's counsel, Citrix counsel said that Citrix has a common interest with Microsoft to ensure that a patent doesn't get to patent troll. Citrix also testified that Citrix and Microsoft together held 70% market share in the virtual desktop space.

54.     On July 16 through 31, 2018, during the state court trial, Khalid's experts, John Forbes and Lorraine Barrick, testified that the value of the software security business and the thin terminal business based on both the '219 and the '637 patent would have been worth around $27 million. Citrix showed the Microsoft M&G letter to the jury to undermine the damages testimony.

55.     On August 1, 2018, in a unanimous verdict, 12 King County jurors found that Citrix breached its agreement, Khalid didn't breach the same agreement by not assigning the '219 patent and the '637 patent to Citrix.  Subsequently, King County Court Judge entered a $5.8 million judgment against Citrix that included a $3 million Jury award, and $2.8 million to cover

LOWE GRAHAM JONES
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

fees and costs. The Court also entered a declaratory judgment against Citrix that Citrix doesn't have any right to either the '219 or the '637 patent. The cost of litigation exceeded $2.8 million.

### Market Size of Technology Covered by Patents and Infringement

56.     On or around July 21, 2017, Microsoft CEO Satya Nadella said in their financial reporting, that "[o]ur gaming business now is more than $9 billion and growing profitably – 2017". Considering Microsoft is not the only player, the overall market size is expected to total at least $400 billion in business over 20 years. A nominal 1% royalty would set the infringement value at $4 billion that Microsoft sought to obtain wrongfully.

57.     Microsoft Xbox One product infringes on claims 1, 4, and 20 of US patent 8,782,637 which is a violation of plaintiff's exclusive right protected under 35 USC § 271. The infringement is a direct use of all of the components disclosed in the '637 patent, or Xbox One use of components in an equivalent way that infringes on the '637 patent. Microsoft's infringement is willful, and Microsoft sought to wrongfully claim the '637 patent right to avoid liability under infringement laws.

### Offshore Tax Engineering Scheme to Avoid Taxes

58.     In 2012, one US senate panel report stated that from 2009 to 2011, Microsoft shifted $21 billion offshore, almost half of its U.S. retail sales revenue, saving up to $4.5 billion in taxes on goods sold in the United States. The report also stated the software giant shifts royalty revenue to units in low-tax nations, such as Singapore and Ireland, avoiding billions of dollars in U.S. taxes.  Those unfair practices impact consumers.

59.     In 2015, the New York Times and Bloomberg made reports based on leaked Panama papers that corporations had been using intellectual property rights as a vehicle to transfer money

SECOND AMENDED COMPLAINT
KHALID v MICROSOFT
Page 14 of 24

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

to offshore accounts to avoid income taxes in the form of tax engineering. In such a tax engineering scheme, corporations would transfer right to intellectual properties to an offshore entity often without any employee and then make a generous royalty payment to such an offshore account and enjoy low or no tax. Those leaked reports and public statements showed that Microsoft and its partner moved billions of dollars offshore.

60.     By 2017, corporations have moved around $2.8 trillion dollars that should have been in the USA and tax revenue from them could have funded many public projects. If corporations develop their intellectual properties through extortion, illegal, unfair and grossly unethical practices, those tax engineering schemes would be unfair and illegal practices. Also, those corporations never disclosed to their employees that employees work towards intellectual properties would be used to further unfair tax engineering practices. With full disclosures, patriotic employees who are the actual owner of intellectual properties would not assign their private right to corporations and not associate themselves with tax engineering schemes that deprive our nation as a whole and their own families of the tax supported programs and places of expectation for our tax dollars.

61.     Corporations used intellectual property to increase brand value/trademark and used the collection of intellectual property to make generous royalty payments to offshore accounts that held rights to intellectual property in order to receive royalty payments and to deceive the IRS and the US public.

## **Microsoft Employee Patent Grabbing Scheme is**

## **Injurious to Employees Rights**

LOWE GRAHAM JONES
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

62.     Microsoft Agreement section 5 award Microsoft "first right of refusal" to any employee patent even if the patent is not related to Microsoft business and protected under RCW 49.44.140. That section violates Washington Statute RCW 49.44.140 and similar statutes in other states.

63.     The "first right of refusal" has value greater than Zero (0) and an employee losses that every day he remains under the contract. The right is in the form of an option, Microsoft can choose to exercise that option at Zero(0) exercise price. The option is more like a mining right to a piece of land owned by employee where the option has value even if it is unknown if that land has any mineable materials.

64.     The Microsoft Employee Agreement assigns right to an employee's future inventions during his employment at the time he signs the Employee Agreement. The agreement doesn't set any scope or boundary to such inventions. Microsoft does not have any inhouse objective standard, or review process, rather the company applies subjective financially motivated, anti-competitive practices.

65.     Any right associated with a patent is a right protected by the Fourteenth Amendment of the United States Constitution. By not defining a clear boundary, Microsoft deprives its employees of due process of law. Microsoft contaminates employee's future invention by creating cloud and uncertainty around the ownership, right, and title to invention upon signing the employee agreement. Microsoft drives the value of such inventions to Zero(0) or negative dollar by demanding a free license with the employee bearing all expenses to maintain the patent family

66.     Microsoft, by claiming any of Plaintiff's patent rights, claimed some services Plaintiff rendered for himself and his start-up that Plaintiff would never render for any employer

voluntarily. Plaintiff's service covered thousands of hours of work he contributed to his patents through development and prosecution of patents that by no means falls under the term of Microsoft Employee Agreement.

67.     The Microsoft Employee Agreement, Section 5 and Section 6, are designed to get free labor from employees and those employees would be working without knowing that Microsoft would or could claim and benefit from this free labor.

68.     Microsoft's use of the exclusion list under Section 6, either destroying the employee's submitted list, as in this Khalid's instant, and perhaps an unknown number of other employee's, or refusing to acknowledge its existence, as this situation has shown, is designed to contaminate an employee's patent that effectively transfers free labor to Microsoft that the employee would never render to Microsoft voluntarily.

69.     Once Microsoft successfully contaminates an employee's patent, as in the instant case, that employee would need tremendous financial resources to clear their patent right through court. An ordinary employee can't afford the time or the legal costs to pursue and challenge a company on the legal court front, nor should anyone be forced to challenge such deception. In the face of such deception, an ordinary employee is forced to unwillingly share his labor with Microsoft without compensation.

70.     Microsoft asked Plaintiff to sign the Employment Agreement on December 19, 2011. Plaintiff started receiving a salary from Microsoft on January 9, 2012. Microsoft later claimed the Employee Agreement was in force from December 19, 2011, not from January 9, 2012, therefore the agreement transferred all inventive services to Microsoft from December 19, 2011. Microsoft didn't pay for 3 weeks of services, but claimed inventive service in an attempt to retain

LOWE GRAHAM JONES
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

free labor, first right of refusal to employee patent, and assignment right to invention for that 3 weeks window.

71.     Microsoft has a systematic scheme, where Microsoft would maliciously take financial advantage of its employees, and engage its multiple employees in employment opportunities, while conspiring to claim and then profit from an employee's patent--an act that deprives the employee from rights he or she is protected by in both the Thirteenth and Fourteenth Amendments of the United States' Constitution.

72.     An ordinary employee can't afford hundreds of thousands of dollars in costs to protect his right through litigation, and he or she can't afford to abandon their patent work because that would be total destruction of their personal property. Rather, they would find him or herself in an unknowing and surprising trap of financial and property submittal. This equates to involuntary servitude under the Thirteenth Amendment. And Microsoft is violating the Fourteenth Amendment right by transferring employee patent right without due process of law. Microsoft doesn't offer any additional compensation for transferring such patent right. Microsoft violation is continuing violation. Because of Microsoft violation, Plaintiff was deprived of enjoyment of his patent right, and Plaintiff couldn't use his labor time and efforts for his intended purpose.

73.     Microsoft conducts a few billion dollars of business with both the federal and local governments every year.

74.     On January 30, 2009, in an email to Cnet News in responding to Microsoft v Miki lawsuit, where Microsoft asserted Miki didn't disclose his patent to Microsoft before employment, Miki Mullor said that he had informed Microsoft about his patent in his resume and employment agreement. Miki backed his statement, and this shows Microsoft assertion in M&G letter that

LOWE GRAHAM JONESₚₗₗ
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

Khalid didn't disclose his inventions is not the first of such statements from Microsoft that show either irreparable and costly neglect in Microsoft's applicant/new employee document bookkeeping, or show an intention to steal intellectual property and labor from their employees.

75.     On January 30, 2009, Miki Mullor further wrote to Cnet, "Microsoft's complaint against me in Washington is a shameful and a desperate attempt to put pressure on me and my family from continuing to pursue our legal rights in the federal court in Los Angeles." Miki's filed patent infringement lawsuit against Microsoft partner Dell, HP and Toshiba in Federal Court in Los Angeles.

76.     Microsoft maintained its pressure scheme on Miki Mullor until the end of 2009 when Miki settled with Microsoft on the patent issue under undisclosed terms. Microsoft, by using its M&G letter in 2016, tried to achieve a similar result where Microsoft partner Citrix System tried to use this same Microsoft assertion written in that letter to harm Khalid's damages claims against Citrix and win on an argument that either Microsoft or Citrix owns the '219 and the '637 patents.

### Damages

77.     The plaintiffs suffered damages caused and proximately caused by the actions of the Defendant as set forth below.

### III.     VIOLATION ALLEGED

### (Count I - Microsoft Violated WA Consumer Protection Act under RCW 19.86.020)

78.     Plaintiff hereby incorporates paragraphs 1 through 77.

LOWE GRAHAM JONES
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

79.     Microsoft's act of claiming ownership of employees' patents free of cost when the employee developed such Patent before joining Microsoft and practice to destroy, conceal, withhold, or deny employee invention disclosures to intimidate or extort an employee to gain access to an employee's patent is both an unfair and a deceptive practice under RCW 19.86.020.

80.     Microsoft's actions related to the employment agreement occurred in trade or commerce.

81.     There exists a public interest embedded in patent rights. Abusing patent rights is injurious to the public. Also, there is a public interest because Microsoft uses the same employee agreement, and employs the same practice to destroy, conceal, or withhold employee invention disclosures with many employees, those employees have been damaged or exposed to Microsoft's unfair practices that can and likely has damaged many employees in the same way it has damaged the Plaintiff.

**(Count II – Defendant Breached Employee Agreement with Plaintiff)**

82.     Plaintiff hereby incorporates paragraphs 1 through 77.

83.     Khalid submitted an exclusion list under section 6 of the Employee Agreement he entered and performed with Microsoft. By claiming that Khalid didn't submit the exclusion and subsequently by claiming the '219 patents, the '637 and the '118 patents Microsoft breach the Employee Agreement.

84.     Microsoft promised Khalid with explicit terms that Microsoft would not claim patent in the exclusion list or that meets section 5 criteria. Microsoft breached that promise.

**(Count III – Defendant Breached a Duty of Good Faith and Fair Dealing Under Employee Contract)**

85.     Plaintiff(s) hereby incorporates paragraphs 1 through 77.

LOWE GRAHAM JONES
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

86.     The duty of good faith and fair dealing arises when one party has discretionary authority to determine a future contract term. Here, Microsoft asked Plaintiff Khalid to submit a patent exclusion list to his Microsoft recruiter. Upon receipt of the list, Microsoft acknowledged, Microsoft had full control over how to preserve/control those records. Microsoft violated a duty of good faith and fair dealing by claiming that the exclusion list Plaintiff Khalid submitted didn't exist, this resulted in Microsoft claiming an entitlement to a royalty-free license to patent(s) listed in the mismanaged exclusion list.

**(Count IV – Declaratory Relief that Microsoft Does Not Own the '219, the '637 and the '118 Patents)**

87.     Plaintiff(s) hereby incorporates paragraphs 1 through 77.

88.     The Microsoft Employment Agreement, a contract, is not enforceable to Plaintiff's '219, '637, and '118 patents.

89.     Microsoft does not own Plaintiff's '219,'637, and '118 patents.

90.     Microsoft does not have any right to Plaintiff's '219, '637 and '118 patents.

**(Count V – Declaratory and Injunctive Relief)**

91.     Plaintiff(s) hereby incorporates paragraphs 1 through 77.

92.     A declaration that Microsoft use of First Right of Refusal in section 5 of the Employee Contract is unenforceable in violation of RCW 49.44.140(1).

93.     A declaration that Microsoft contract violated RCW 49.44.140(1), RCW 49.44.140(2) and RCW 49.44.140(3).

**(Count VI - Reserving Right to Add New Claim or Amending Claims)**

94.      Plaintiff hereby incorporates paragraphs 1 through 80.

LOWE GRAHAM JONES

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

95.     Plaintiff reserved his right to add back claims in the First Amended Complaint not added in this complaint, including but not limited to claim related to RCW 19.86.030.

96.     Plaintiffs(s) are reserving the right to add new claims and/or to amend any claims in this complaint as the law permits.

## IV.     REQUESTED RELIEF

WHEREFORE, plaintiffs pray for relief as follows:

1.     Civil remedies under RCW 19.86.090 and RCW 9A.82.100(4)(d) including treble damage, cost, and fees.

2.     Damages to Plaintiff's Career in term of lost salary and benefits from his startup. Damages to Plaintiff's Executive career in terms of executive pay and other benefits.

3.     Damages for loss of patents, and damages for loss of profit in businesses in an amount to be proven at trial. Damages to Startup Company in an amount to be proven at trial.

4.     Damages for emotional distress, loss of enjoyment of life, humiliation, personal indignity, embarrassment, fear, anxiety, and/or anguish.

5.     Injunctive relief and declaratory judgment in Plaintiff's favor.

6.     Prejudgment interest in an amount to be proven at trial.

7.     Compensation for the tax penalty associated with any recovery.

8.     Costs and legal fees pursuant to RCW 59.18, RCW 49.48.030, RCW 49.52.070, RCW 19.86.090 and RCW 4.84 or other rules of law and/or equity.

9.     Civil penalty under RCW19.86.140 and remedy under RCW 19.86.080, RCW 10.01.100 and RCW 9.92.030

LOWE GRAHAM JONES℠

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

10.     Protection under the whistleblower laws and/or similar laws so that Defendant(s) can't harass Plaintiff.

11.     Penalty for inconvenience and discomfort as authorized under <u>Cherberg v. Peoples Nat'l Bank, 564 P. 2d 1137 - Wash: Supreme Court 1977</u>.

12.     Whatever further and additional relief the court shall deem just and equitable.

## V.     DEMAND FOR JURY

Plaintiff(s) hereby demands that this case is tried before TWELVE jurors.

EXECUTED at Seattle, Washington on this 20th day of November 2023

_____
Mark P. Walters

LOWE GRAHAM JONES PLLC
Mark P. Walters, WSBA No. 30819
Mitchell D. West, WSBA No. 53103
*Walters@LoweGrahamJones.com*
*West@LoweGrahamJones.com*
1325 Fourth Avenue, Suite 1130
Seattle, Washington 98101
T: 206.381.3300
F: 206.381.3301

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, Rischel Voigt, hereby certify under penalty of perjury of the laws of the State of Washington that on November 20, 2023, I caused to be served a copy of the foregoing

LOWE GRAHAM JONES PLLC
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

1   document was filed electronically with the Clerk of the Court using the CM/ECF system.

2   Notice of this filing will be sent to all counsel of record via the court's electronic filing system.

3                                                  */s/Rischel  Voigt*
                                                   Rischel Voigt, Paralegal
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

LOWE GRAHAM JONES
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

# EXHIBIT C

THE HONORABLE SANDRA WIDLAN
Trial Date: May 20, 2024

SUPERIOR COURT OF WASHINGTON
FOR KING COUNTY

| | |
|---|---|
| ATM SHAFIQUL, KHALID, an individual and on behalf of similarly situated, Xencare Software, Inc.; | ) No. 19-2-02755-0 SEA<br>)<br>) |
| Plaintiff(s), | ) JOINT CONFIRMATION REGARDING<br>) TRIAL READINESS<br>) |
| vs. | ) **CLERK'S ACTION REQUIRED** |
| MICROSOFT CORPORATION, a Washington Corporation, One Redmond Way, Redmond, Washington, | )<br>)<br>) |
| Defendant(s). | )<br>) |

The parties jointly represent that they have conferred regarding the following information, are aware of all deadlines and requirements in the Pretrial Order, and certify the following to the Court regarding trial readiness. If parties are unable to confirm jointly each party is required to file a separate confirmation.

**A.**     All parties are represented by counsel. If any party is not represented by counsel, state that party's name, current mailing address, and telephone number.

**B.**     The trial is presently set as a jury trial.

**C.**     It is estimated, based upon a maximum of 5 trial hours per day, that this trial will last fifteen (15) days.

JOINT CONFIRMATION OF TRIAL READINESS -- 1

**D.**   Alternative Dispute Resolution (ADR) with a third party WAS accomplished.
X Yes or _____ No.

If ADR was a neutral third party **WAS NOT** accomplished, you must provide a detailed explanation and identify what arrangements have been made to complete ADR before trial. Counsel party(ies) may be sanctioned for failure to comply with this requirement.

_____n/a_____

_____

_____

**E.**   Interpreter(s): _X_____No; _____Yes [Langugae:]

Interpreter(s)  requested  for:(party/witness ):

Interpreter(s)  arranged  by:  _____Court_____

Expert(s):  __X___  Yes;_____No

Expert(s) Out of Town: X Yes;_____No

Out of town parties:  _X_____  Yes;_____No

Out of town witnesses: X Yes;_____ No

**F.**   OTHER:

OTHER REQUIREMENTS:

**1.  CR 16 CONFERENCE:**

Any party may file a motion for a CR 16 Conference with the assigned Judge.

**2.  TRIAL WEEK AVAILABILITY:**

**If counsel has another trial scheduled at the same time; identify name, cause number, venue of case, and dates of trial. Unusual problems scheduling witnesses should be noted.**

**NOTICE: Cases otherwise ready may be held on standby status during the week trial is scheduled to start. Counsel must be within two hours of the designated courthouse while on standby.**

JOINT CONFIRMATION OF TRIAL READINESS -- 2

LOWE GRAHAM JONES ᴘʟʟᴄ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

NOTE: It is the responsibility of the parties to arrange for necessary trial equipment.

DATED this 29th day of March 2024

| Lowe Graham Jones PLLC | BRADLEY BERNSTEIN SANDS LLP |
|---|---|
| By: /s/*Mark P. Walters* <br> Mark P. Walters, WSBA No. 30819 <br> Mitchell D. West, WSBA No. 53103 <br> *Walters@LoweGrahamJones.com* <br> *West@LoweGrahamJones.com* <br> 1325 Fourth Avenue, Suite 1130 <br> Seattle, Washington 98101 <br> T: 206.381.3300 <br><br> *Attorneys for Plaintiff* | By: /s/*Erin Bernstein* (with permission ) <br> Heidi Bradley, WSBA No. 35759 <br> *hbradley@bradleyberstein.com* <br> 2800 First Avenue, Suite 326 <br> Seattle, Washington 98121 <br> T: 206.337.6551 <br><br> Erin Bernstein, admitted pro hac vice <br> Gina Elliott, admitted pro hac vice <br> ebernstein@bradleybernstein.com <br> gelliott@bradleybernstein.com <br> 3911 Harrison St., Suite 100 <br> Oakland, CA 94611 <br><br> *Attorneys for Defendant* |

LOWE GRAHAM JONES PLLC
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

1

2

<u>**CERTIFICATE OF SERVICE**</u>

3
4

I, Rischel Voigt, hereby certify under penalty of perjury of the laws of the State of Washington that on March 29th, 2024, I caused to be served a copy of the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record via the court's electronic filing system.

5

6

7

8

9

*/s/Rischel Voigt*
Rischel Voigt, Paralegal

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JOINT CONFIRMATION OF TRIAL READINESS -- 4

Lowe Graham Jones PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

# EXHIBIT D

## SUPERIOR COURT OF THE STATE OF WASHINGTON
## KING COUNTY

| | |
|---|---|
| ATM SHAFIQUL KHALID, an individual and on behalf of similarly situated, Xencare Software Inc., Plaintiff/Petitioner | NO.  19-2-02755-0 SEA |
| | **ORDER SETTING PRETRIAL CONFERENCE** |
| vs | SCOMIS CODE **ORPTH** |
| MICROSOFT CORPORATION, a Washington Corporation, Defendant/Respondent. | |

A pretrial conference in the above referenced case is set for 4/05/2024 9:00 AM  (courtroom W928). Participation by the parties is mandatory.

The conference will be held:  ☐ in person    ☒ by Zoom

To connect to the Zoom meeting, please use the meeting information below:

Meeting URL:        https://kingcounty.zoom.us/j/84132338339

Meeting ID:          841 3233 8339

Passcode:            417464

**Each party shall email the Court to confirm participation at least (5) five days before the conference at Straley.Court@kingcounty.gov please provide your current e-mail address and contact telephone number.**

**The parties shall also complete and file a Joint Confirmation of Trial Readiness form pursuant to LCR 16(a) along with an Estimate of Witness Examination Sheet.  Parties are to provide working copies of the forms to the assigned judge, at least five (5) court days before the conference.**

Pretrial conferences will only be stricken if all issues have been resolved and dispositive pleadings or Notice of Settlement form have been filed with copies to the undersigned court.

ANY PARTY RECEIVING THIS NOTICE MUST MAIL A COPY TO ANY PARTY NOT LISTED BELOW AND INFORM THE BAILIFF AT **Straley.Court@kingcounty.gov**

FAILURE TO APPEAR AT A COURT ORDERED PRE-TRIAL CONFERENCE MAY RESULT IN SANCTIONS.

Dated : 03/19/2024

_____

Judge Nicholas B. Straley

JUDGE Nicholas B. Straley

_____ v. _____

## Estimate of Witness Examinations

**Submission of the following information is <u>required</u> by Judge Straley, in every case.**

**DO NOT FILE THIS DOCUMENT WITH THE CLERK'S OFFICE.  Please forward a copy to the bailiff via email.**

For estimates, please use 15 minute increments.  Note that a typical trial day is 9:00 am to noon, 1:30 pm to 4:00 pm.  Both morning and afternoon sessions have a 15 minute break.  This results in five (5) hours of trial every day.

### PLAINTIFF(S)

| Witness Name | Direct Exam | Cross-Exam | Re-Direct Exam | Total |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
| TOTAL TIME FOR ALL WITNESSES: |  |  |  |  |

### DEFENDANT(S)

| Witness Name | Direct Exam | Cross-Exam | Re-Direct Exam | Total |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
| TOTAL TIME FOR ALL WITNESSES: |  |  |  |  |

Counsel are to confer not later than ten calendar days prior to the trial date to determine estimations for cross-examination time for each party's witnesses and prepare this document. You may use this form, or create one of your own, as long as it includes the requested information.

If there are additional parties, each party should create and complete the required information for that party's witnesses.

# EXHIBIT E

1
2
3
4
5
6
7
8
9

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
COUNTY OF KING

10
11
12

ATM SHAFIQUL KHALID, an individual and

13

on behalf of similarly situated, Xencare

14

Software, Inc.

15
16

Plaintiff(s),

17
18

vs.

19

MICROSOFT CORPORATION,

20

a Washington Corporation,

21

One Redmond Way, Redmond, Washington

22
23
24

Defendant(s).

25
26

**No.  19-2-02755-0 SEA**

**SUPPLEMENTAL WITNESS LIST**

Plaintiff disclosed Preliminary Witness list on June 6th, 2022. Bellow list is to supplement the previous list that also includes the previous list.

| Name and reason to be a witness | Contact |
|---|---|
| 1. ATM Shafiqul Khalid<br>The plaintiff in this case. | ATM Shafiqul Khalid<br>atmkhalid@gmail.com<br>Ph: 425-445-7157 |
| 2. Satya Nadela, Microsoft CEO<br>Nadela disclosed material information on the Xbox market share in company meetings. Plaintiff disclosed to Nadela and his team about mini-cloud, Microsoft declined and then asserted ownership. Has knowledge surrounding the dispute. | Heidi B. Bradley<br>Email: hbradley@bradleybernsteinllp.com |
| 3. Brad Smith, Microsoft President, and legal counsel<br>Plaintiff disclosed to Nadela, Brad, and his team about mini-cloud, Microsoft declined and then asserted ownership. Has knowledge surrounding the dispute. | Heidi B. Bradley<br>Email: hbradley@bradleybernsteinllp.com |
| 4. Stephen Elop, Microsoft Executive<br>Plaintiff disclosed to Nadela, Elop, and his team about mini-cloud, Microsoft declined and then asserted ownership. Has knowledge surrounding the dispute. | Heidi B. Bradley<br>Email: hbradley@bradleybernsteinllp.com |
| 5. Patrick Evans, Microsoft employee<br>Evans contacted Khalid to assert patent ownership. Has knowledge surrounding the dispute. | Heidi B. Bradley<br>Email: hbradley@bradleybernsteinllp.com |
| 6. Shannon Carlsen, or equivalent | Heidi B. Bradley<br>Email: hbradley@bradleybernsteinllp.com |

| | |
|---|---|
| Microsoft recruiter<br>Shannon/Recruiter coordinated with Khalid on the employee agreement. Has knowledge surrounding the dispute. | |
| 7. Employee Orientation stuff, Microsoft employee<br>Conducted new employee orientation in 2011. Should be able to testify how hand signatures on employee agreements are collected and processed. | Heidi B. Bradley<br>Email: hbradley@bradleybernsteinllp.com |
| 8. Andrew T. Pouzeshi or representative of Merchant & Gold. Microsoft external contactor<br>Microsoft appointed Merchant & Gold to assert ownership of Khalid's patents. | Heidi B. Bradley<br>Email: hbradley@bradleybernsteinllp.com |
| 9. Lorraine Barrick, Expert witness in Khalid v Citrix lawsuit. Lorraine set the valuation of a startup whose recovery Microsoft damaged | ATM Shafiqul Khalid<br>atmkhalid@gmail.com<br>Ph: 425-445-7157 |
| 10. Expert Witness, to be disclosed<br>To set a valuation of patent term | ATM Shafiqul Khalid<br>atmkhalid@gmail.com<br>Ph: 425-445-7157 |
| 11. Microsoft Corporation, corporate representative. Has material information on how employee contract is managed and preserved. | Heidi B. Bradley<br>Email: hbradley@bradleybernsteinllp.com |
| 12. Xencare Software, Inc. Corp representative<br>Has material information on assets and other properties | ATM Shafiqul Khalid<br>atmkhalid@gmail.com<br>Ph: 425-445-7157 |

| 13. Microsoft recruiter 2<br>Microsoft will identify this witness from the HR department who has present knowledge and can answer how he would handle Patent Disclosure List if an employee contacts him/her. | Heidi B. Bradley<br>Email: hbradley@bradleybernsteinllp.com |
|---|---|
| 14. Microsoft Employee 2 And Employee 3<br>Microsoft will identify this witness from LCA/legal/ HR department who can testify to Microsoft's current policy in 2023 related to patent disclosure by an employee, along with its collection and retention.<br>Microsoft needs to identify another employee who can testify regarding the same issues as above with a timeline in the year 2011/2012. | Heidi B. Bradley<br>Email: hbradley@bradleybernsteinllp.com |
| 15. Quamrul Mina, Witness<br>Quamrul Mina will testify on his investment commitment in 2015 of $350,000 and that he didn't proceed because of Microsoft's assertion on patents. | ATM Shafiqul Khalid<br>atmkhalid@gmail.com<br>Ph: 425-445-7157 |
| 16. Muhammed Hussain(Iqbal), Witness<br>Iqbal will testify on his investment commitment in 2015 of $200,000 and which didn't proceed because of Microsoft's assertion on patents. | ATM Shafiqul Khalid<br>atmkhalid@gmail.com<br>Ph: 425-445-7157 |
| 17. Asifur Rahman, Witness<br>Asif will testify on his investment commitment in 2015 of $100,000 and which | ATM Shafiqul Khalid<br>atmkhalid@gmail.com<br>Ph: 425-445-7157 |

| | |
|---|---|
| didn't proceed because of Microsoft's assertion on patents. | |
| 18. Ahmed Khan, Witness<br>Mr. Khan can testify to Khalid's efforts on his patents inventions, and efforts to commercialize, and failures because of wrongful patent ownership dispute | ATM Shafiqul Khalid<br>atmkhalid@gmail.com<br>Ph: 425-445-7157 |
| 19.  Mickey Ferri, Ph.D.,<br><br>      Insight Economics, San Diego, CA<br>Damage Expert witness to testify economic damage amounts to the Plaintiff's patent term referenced in this litigation, economic Damage to the plaintiff's start-up business, and economic damage to Plaintiff's executive career. Mickey's profile is attached to this disclosure. Mickey's review is ongoing and he has not formed his opinion yet in this case. Mickey will testify based on his extensive experience and analysis. Mickey will review the pieces of evidence, damage estimation, and analysis Plaintiff alleged in the complaint and other documents and email plaintiff furnished to Defendant.<br>Ferri will testify about items related to damages and issues identified in the preliminary documents Plaintiff shared with Microsoft under FRE 408, titled "Damage Model Washington State Court", and "Claim Chart   Explaining how Xbox One and Windows-10 is infringing US patent No. | ATM Shafiqul Khalid<br>atmkhalid@gmail.com<br>Ph: 425-445-7157 |

| | |
|---|---|
| 8,782,637, 10,846,118, and 8,286,219" and "Claim Chart Explaining how Sony PlayStation is infringing US patent No. 8,782,637, 10,846,118, and 8,286,219". | |
| 20. David B. Lett<br><br>Damage Expert witness to testify economic damage amounts to the Plaintiff's patent term referenced in this litigation, economic Damage to the plaintiff's start-up business, and economic damage to Plaintiff's executive career. Davids's profile is attached to this disclosure. David's review is ongoing and he has not formed his opinion yet in this case. David will testify based on his extensive experience and analysis. David will review the pieces of evidence, damage estimation, and analysis Plaintiff alleged in the complaint and other documents and email plaintiff furnished to Defendant.<br><br>David will testify on the importance of patent, and incubation efforts in terms of engineering hours and costs associated with developing inventions including prototypes.<br>David will testify about items related to damages and issues identified in the preliminary documents Plaintiff shared with Microsoft under FRE 408, titled "Damage Model Washington State Court", and "Claim | ATM Shafiqul Khalid<br>atmkhalid@gmail.com<br>Ph: 425-445-7157 |

| | |
|---|---|
| Chart Explaining how Xbox One and Windows-10 is infringing US patent No. 8,782,637, 10,846,118, and 8,286,219" and "Claim Chart Explaining how Sony PlayStation is infringing US patent No. 8,782,637, 10,846,118, and 8,286,219". | |
| 21. Tony Mason<br><br>Damage Expert witness to testify technical issues, technology involved in the patents and Plaintiff's start-up, Microsoft products, and relevance to Plaintiff's patent. How critical those patents are to Microsoft products. Tony will also testify how those patents are related to other products like the Sony Play Station console. Tony's profile is attached to this disclosure. Tony's review is ongoing and he has not formed his opinion yet in this case. Tony will testify based on his extensive experience and analysis. Tony will review the pieces of evidence, damage estimation, and analysis Plaintiff alleged in the complaint and other documents and email plaintiff furnished to Defendant.<br><br>Tony will testify about items related to damages and issues identified in the preliminary documents Plaintiff shared with Microsoft under FRE 408, titled "Damage Model Washington State Court", and "Claim | ATM Shafiqul Khalid<br><br>atmkhalid@gmail.com<br><br>Ph: 425-445-7157 |

| | |
|---|---|
| Chart Explaining how Xbox One and Windows-10 is infringing US patent No. 8,782,637, 10,846,118, and 8,286,219" and "Claim Chart Explaining how Sony PlayStation is infringing US patent No. 8,782,637, 10,846,118, and 8,286,219". | |
| 22. Toussaint L. Myricks, or any licensed patent attorney. Expert witness on issues related to patent law, patent process, difficulties, etc. Toussaint is a licensed patent attorney and will testify on issues related to patents. https://www.myrickslaw.com/meet-toussaint-lmyricks-esq.html | ATM Shafiqul Khalid atmkhalid@gmail.com Ph: 425-445-7157 |
| 23. Daniel C. Benson Expert Witness. Daniel will testify on the importance of patent, and incubation efforts in terms of engineering hours and costs associated with developing inventions including prototypes. Benson's profile is attached. He will testify on issues relevant to this case and that he has experience at. Benson will testify about items related to damages and issues identified in the preliminary documents Plaintiff shared with Microsoft under FRE 408, titled "Damage Model Washington State Court", and "Claim | ATM Shafiqul Khalid atmkhalid@gmail.com Ph: 425-445-7157 |

| Chart  Explaining how Xbox One and Windows-10 is infringing US patent No. 8,782,637, 10,846,118, and 8,286,219" and "Claim Chart  Explaining how Sony PlayStation is infringing US patent No. 8,782,637, 10,846,118, and 8,286,219". | |

**SIGNED and DATED** this ___20th___ March 2023.



_____
Plaintiff Pro Se
ATM Shafiqul Khalid
17446 NE 28th ST
Redmond, WA 98052
(425) 445 7157
atmkhalid@gmail.com

1

2

3

**<u>CERTIFICATE OF SERVICE</u>**

4

5

6

I, ATM Shafiqul Khalid, hereby certify under penalty of perjury of the laws of the State of

7

Washington that on March 20, 2022, I caused to be served a copy of the foregoing document on

8

the following person(s) in the manner indicated below at the following address(es).

9

10

Heidi B. Bradley, WSBA No. 35759
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, WA 98111-9402
Telephone: 206.223.7000
Facsimile: 206.223.7107
Email: hbradley@bradleybernsteinllp.com

11

12

13

14

15

DATED this 20th day of March, 2022, at Seattle, Washington.

16

17

18

_____

19

ATM SHAFIQUL KHALID

20

21

22

23

24

25

26

# EXHIBIT F

1
2
3
4
5
6
7
8
9
IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
10
COUNTY OF KING
11
12
ATM SHAFIQUL KHALID, an individual and
13
on behalf of similarly situated, Xencare
14
Software, Inc.
15
16
Plaintiff(s),
17
18
vs.
19
MICROSOFT CORPORATION,
20
a Washington Corporation,
21
One Redmond Way, Redmond, Washington
22
23
24
Defendant(s).
25
26

No.  19-2-02755-0 SEA

**SUPPLEMENTAL WITNESS LIST**

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052,  (425) 445-7157

Plaintiff disclosed Preliminary Witness list on June 6th, 2022. Bellow list is to supplement the previous list that also includes the previous list.

| Name and reason to be a witness | Contact |
|---|---|
| 1. ATM Shafiqul Khalid<br>The plaintiff in this case. | ATM Shafiqul Khalid<br>atmkhalid@gmail.com<br>Ph: 425-445-7157 |
| 2. Satya Nadela, Microsoft CEO<br>Nadela disclosed material information on the Xbox market share in company meetings. Plaintiff disclosed to Nadela and his team about mini-cloud, Microsoft declined and then asserted ownership. Has knowledge surrounding the dispute. | Heidi B. Bradley<br>Email: hbradley@bradleybernsteinllp.com |
| 3. Brad Smith, Microsoft President, and legal counsel<br>Plaintiff disclosed to Nadela, Brad, and his team about mini-cloud, Microsoft declined and then asserted ownership. Has knowledge surrounding the dispute. | Heidi B. Bradley<br>Email: hbradley@bradleybernsteinllp.com |
| 4. Stephen Elop, Microsoft Executive<br>Plaintiff disclosed to Nadela, Elop, and his team about mini-cloud, Microsoft declined and then asserted ownership. Has knowledge surrounding the dispute. | Heidi B. Bradley<br>Email: hbradley@bradleybernsteinllp.com |
| 5. Patrick Evans, Microsoft employee<br>Evans contacted Khalid to assert patent ownership. Has knowledge surrounding the dispute. | Heidi B. Bradley<br>Email: hbradley@bradleybernsteinllp.com |
| 6. Shannon Carlsen, or equivalent | Heidi B. Bradley<br>Email: hbradley@bradleybernsteinllp.com |

| | |
|---|---|
| Microsoft recruiter<br>Shannon/Recruiter coordinated with Khalid on the employee agreement. Has knowledge surrounding the dispute. | |
| 7. Employee Orientation stuff, Microsoft employee<br>Conducted new employee orientation in 2011. Should be able to testify how hand signatures on employee agreements are collected and processed. | Heidi B. Bradley<br>Email: hbradley@bradleybernsteinllp.com |
| 8. Andrew T. Pouzeshi or representative of Merchant & Gold. Microsoft external contactor<br>Microsoft appointed Merchant & Gold to assert ownership of Khalid's patents. | Heidi B. Bradley<br>Email: hbradley@bradleybernsteinllp.com |
| 9. Lorraine Barrick, Expert witness in Khalid v Citrix lawsuit. Lorraine set the valuation of a startup whose recovery Microsoft damaged | ATM Shafiqul Khalid<br>atmkhalid@gmail.com<br>Ph: 425-445-7157 |
| 10. Expert Witness, to be disclosed<br>To set a valuation of patent term | ATM Shafiqul Khalid<br>atmkhalid@gmail.com<br>Ph: 425-445-7157 |
| 11. Microsoft Corporation, corporate representative. Has material information on how employee contract is managed and preserved. | Heidi B. Bradley<br>Email: hbradley@bradleybernsteinllp.com |
| 12. Xencare Software, Inc. Corp representative<br>Has material information on assets and other properties | ATM Shafiqul Khalid<br>atmkhalid@gmail.com<br>Ph: 425-445-7157 |

| 13. Microsoft recruiter 2<br>Microsoft will identify this witness from the HR department who has present knowledge and can answer how he would handle Patent Disclosure List if an employee contacts him/her. | Heidi B. Bradley<br>Email: hbradley@bradleybernsteinllp.com |
|---|---|
| 14. Microsoft Employee 2 And<br>        Employee 3<br>Microsoft will identify this witness from LCA/legal/ HR department who can testify to Microsoft's current policy in 2023 related to patent disclosure by an employee, along with its collection and retention.<br>Microsoft needs to identify another employee who can testify regarding the same issues as above with a timeline in the year 2011/2012. | Heidi B. Bradley<br>Email: hbradley@bradleybernsteinllp.com |
| 15. Quamrul Mina, Witness<br>Quamrul Mina will testify on his investment commitment in 2015 of $350,000 and that he didn't proceed because of Microsoft's assertion on patents. | ATM Shafiqul Khalid<br>atmkhalid@gmail.com<br>Ph: 425-445-7157 |
| 16. Muhammed Hussain(Iqbal), Witness<br>Iqbal will testify on his investment commitment in 2015 of $200,000 and which didn't proceed because of Microsoft's assertion on patents. | ATM Shafiqul Khalid<br>atmkhalid@gmail.com<br>Ph: 425-445-7157 |
| 17. Asifur Rahman, Witness<br>Asif will testify on his investment commitment in 2015 of $100,000 and which | ATM Shafiqul Khalid<br>atmkhalid@gmail.com<br>Ph: 425-445-7157 |

| | |
|---|---|
| didn't proceed because of Microsoft's assertion on patents. | |
| 18. Ahmed Khan, Witness<br>Mr. Khan can testify to Khalid's efforts on his patents inventions, and efforts to commercialize, and failures because of wrongful patent ownership dispute | ATM Shafiqul Khalid<br>atmkhalid@gmail.com<br>Ph: 425-445-7157 |
| 19. Mickey Ferri, Ph.D.,<br><br>          Insight Economics, San Diego, CA<br>Damage Expert witness to testify economic damage amounts to the Plaintiff's patent term referenced in this litigation, economic Damage to the plaintiff's start-up business, and economic damage to Plaintiff's executive career. Mickey's profile is attached to this disclosure. Mickey's review is ongoing and he has not formed his opinion yet in this case. Mickey will testify based on his extensive experience and analysis. Mickey will review the pieces of evidence, damage estimation, and analysis Plaintiff alleged in the complaint and other documents and email plaintiff furnished to Defendant.<br>Ferri will testify about items related to damages and issues identified in the preliminary documents Plaintiff shared with Microsoft under FRE 408, titled "Damage Model Washington State Court", and "Claim Chart Explaining how Xbox One and Windows-10 is infringing US patent No. | ATM Shafiqul Khalid<br>atmkhalid@gmail.com<br>Ph: 425-445-7157 |

| | |
|---|---|
| 8,782,637, 10,846,118, and 8,286,219" and "Claim Chart Explaining how Sony PlayStation is infringing US patent No. 8,782,637, 10,846,118, and 8,286,219". | |
| 20. David B. Lett<br><br>Damage Expert witness to testify economic damage amounts to the Plaintiff's patent term referenced in this litigation, economic Damage to the plaintiff's start-up business, and economic damage to Plaintiff's executive career. Davids's profile is attached to this disclosure. David's review is ongoing and he has not formed his opinion yet in this case. David will testify based on his extensive experience and analysis. David will review the pieces of evidence, damage estimation, and analysis Plaintiff alleged in the complaint and other documents and email plaintiff furnished to Defendant.<br><br>David will testify on the importance of patent, and incubation efforts in terms of engineering hours and costs associated with developing inventions including prototypes.<br>David will testify about items related to damages and issues identified in the preliminary documents Plaintiff shared with Microsoft under FRE 408, titled "Damage Model Washington State Court", and "Claim | ATM Shafiqul Khalid<br>atmkhalid@gmail.com<br>Ph: 425-445-7157 |

| | |
|---|---|
| Chart Explaining how Xbox One and Windows-10 is infringing US patent No. 8,782,637, 10,846,118, and 8,286,219" and "Claim Chart Explaining how Sony PlayStation is infringing US patent No. 8,782,637, 10,846,118, and 8,286,219". | |
| 21. Tony Mason<br><br>Damage Expert witness to testify technical issues, technology involved in the patents and Plaintiff's start-up, Microsoft products, and relevance to Plaintiff's patent. How critical those patents are to Microsoft products. Tony will also testify how those patents are related to other products like the Sony Play Station console. Tony's profile is attached to this disclosure. Tony's review is ongoing and he has not formed his opinion yet in this case. Tony will testify based on his extensive experience and analysis. Tony will review the pieces of evidence, damage estimation, and analysis Plaintiff alleged in the complaint and other documents and email plaintiff furnished to Defendant.<br><br>Tony will testify about items related to damages and issues identified in the preliminary documents Plaintiff shared with Microsoft under FRE 408, titled "Damage Model Washington State Court", and "Claim | ATM Shafiqul Khalid<br><br>atmkhalid@gmail.com<br><br>Ph: 425-445-7157 |

| | |
|---|---|
| Chart Explaining how Xbox One and Windows-10 is infringing US patent No. 8,782,637, 10,846,118, and 8,286,219" and "Claim Chart Explaining how Sony PlayStation is infringing US patent No. 8,782,637, 10,846,118, and 8,286,219". | |
| 22. Toussaint L. Myricks, or any licensed patent attorney.<br><br>Expert witness on issues related to patent law, patent process, difficulties, etc. Toussaint is a licensed patent attorney and will testify on issues related to patents.<br><br>https://www.myrickslaw.com/meet-toussaint-lmyricks-esq.html | ATM Shafiqul Khalid<br><br>atmkhalid@gmail.com<br><br>Ph: 425-445-7157 |
| 23. Daniel C. Benson<br><br>Expert Witness. Daniel will testify on the importance of patent, and incubation efforts in terms of engineering hours and costs associated with developing inventions including prototypes. Benson's profile is attached. He will testify on issues relevant to this case and that he has experience at.<br><br>Benson will testify about items related to damages and issues identified in the preliminary documents Plaintiff shared with Microsoft under FRE 408, titled "Damage Model Washington State Court", and "Claim | ATM Shafiqul Khalid<br><br>atmkhalid@gmail.com<br><br>Ph: 425-445-7157 |

| Chart Explaining how Xbox One and Windows-10 is infringing US patent No. 8,782,637, 10,846,118, and 8,286,219" and "Claim Chart Explaining how Sony PlayStation is infringing US patent No. 8,782,637, 10,846,118, and 8,286,219". | |

**SIGNED and DATED** this ___20th___ March 2023.



_____

Plaintiff Pro Se
ATM Shafiqul Khalid
17446 NE 28th ST
Redmond, WA 98052
(425) 445 7157
atmkhalid@gmail.com

## CERTIFICATE OF SERVICE

I, ATM Shafiqul Khalid, hereby certify under penalty of perjury of the laws of the State of Washington that on March 20, 2022, I caused to be served a copy of the foregoing document on the following person(s) in the manner indicated below at the following address(es).

Heidi B. Bradley, WSBA No. 35759
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, WA 98111-9402
Telephone: 206.223.7000
Facsimile: 206.223.7107
Email: hbradley@bradleybernsteinllp.com

DATED this 20th day of March, 2022, at Seattle, Washington.

ATM SHAFIQUL KHALID

# EXHIBIT G

CONFIDIENTIAL SUBJECT TO PROTECTIVE ORDER – PRELIMINARY DRAFT



February 8, 2024

Mark Walters
Lowe Graham Jones PLLC
1325 4th Avenue,
Seattle, WA 98101

Dear Attorney Walters:

As you are aware, I have been retained in the matter of *Khalid v. Microsoft*, in King County Superior Court to evaluate specific patent technology that is part of an ongoing dispute between the parties.

In my role, I act as a neutral party providing my expert evaluation of the evidence I am asked to review. I have no interest in the outcome of the case, and I have no personal relationship with any of the parties involved. In reviewing the materials, I have provided my opinion of the evidence based upon my education, experience, and knowledge in the technology industry. I have provided a copy of my current CV and litigation history along with this letter.

Please note that this letter is not a full report. Thus, I have not exhaustively evaluated the patents for validity. Instead, I have assumed that the patents are, as issued, valid and that should the parties engage in litigation in the future about patent infringement a complete analysis of them will be required.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER – PRELIMINARY DRAFT

In the current case, I have merely been asked to evaluate the patents, determine if they apply to game console emulation and cloud gaming, and if so, to identify potential parties that may be infringing these patents.

The three patents that I have reviewed are: 8,782,637, 10,846,118, and 8,286,219.  I have obtained copies of those patents and the patent files from the USPTO's patent service.  I have done a cursory review of the file records and have considered the patents and how they apply to: (1) game console emulation, such as is sometimes used to allow older console games to play on newer consoles, and (2) cloud gaming.  These techniques are tied to a general concept known as *virtualization.*

Virtualization is not a new concept – IBM first proposed building products with full hardware virtualization in 1967 and commercially shipped their first fully virtual system in 1972. This was the basis of the VM/CMS operating system that was used on IBM mainframes, and a variant of it is still used to this day.

Microprocessors did not have sufficient processing power to provide virtualization support.  The first notable Intel CPU with virtualization was the 80386, which introduced the concept of a "virtual 8086".  This was, in fact, a "backwards compatibility solution" to allow programs that could not run in the protected mode of the 80386 CPU (a full 4GB virtual address space) to operate in a special environment where the running program behaved as if it were running on the older Intel CPU.  While there were significant limitations to this virtualization, it provided the seed of hardware virtualization on Intel CPUs that ultimately culminated in the introduction of hardware supported virtualization. Early companies, including VMWare (now a subsidiary of Broadcom) and Xen, achieved this by providing partial hardware virtualization and implementing software mechanisms to overcome the limitations of Intel hardware.

Intel introduced hardware assisted virtualization (VX-x) in 2005, and AMD introduced hardware assisted virtualization (AMD-V) in 2006.  These early hardware virtualization mechanisms had significant limitations, including in terms of performance, and thus were not used in performance critical usage scenarios.  However, both Intel and AMD have enhanced their hardware

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER – PRELIMINARY DRAFT

virtualization to permit.  In the timeframe of the two older patents filing (2010), Intel processor hardware virtualization technology was making the key steps that were required to enabling its broader use for performance critical virtualization: 2008 was the introduction of Extended Page Tables (a mechanism to improve performance of address translations in virtualized machines,) 2010 allowed running logical processors in real mode (which required EPT).  It isn't until 2013 that Intel introduced greater support for nested virtual machines (that is a virtual machine running within another virtual machine.)

The reason I have provided this historical background is to explain that the older two patents were forward-looking relative to the state of the actual hardware capabilities at the time the patents were filed.

As the industry has progressed, earlier alternatives to hardware virtualization have largely disappeared due to their complexity and technological limitations.

The primary benefit of virtualization in data centers, which is directly applicable to cloud gaming, is that it provides highly flexible scaling of services.  Increased demand can often be satisfied simply by creating a new "virtual machine."  This flexibility has led to the rise of large service providers including Amazon, Microsoft, IBM, and Google.  These companies constantly look for new ways to increase the flexibility and support of their service centers.  For example, to support an Xbox 360 emulator inside an Azure data center does not require installing any Xbox hardware – it merely requires creating a virtual machine that provides the capabilities of the Xbox hardware.  The graphics elements are then compressed and sent to a client device.

There are significant benefits to this approach: dynamic flexibility in scaling services to satisfy instant demand, the use of a combination of commodity and customized hardware, and the ability to introduce optimizations that are simply impossible if the game console is inside an end-user's entertainment room.

In considering these patents and their potential use by third parties, I have identified four companies that appear to be using virtualization-based solutions consistent with the claims of the patents.  They are:

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER – PRELIMINARY DRAFT

- Sony.  Their PS3 platform was based on the cell processor, which was a descendant of the Power PC processor, it is not an Intel-compatible CPU. To make PS3 games work on subsequent platforms was most easily implemented using a virtual machine that emulated the cell processor instruction set.  Other alternatives would have been more expensive and less flexible.  While it is possible Sony used a virtualization solution for PS4 to PS5 compatibility, there is insufficient public information to determine if this is, in fact, the case.

- Microsoft.  Their original Xbox console was based on an Intel CPU, while their second-generation console, Xbox 360 used a PowerPC based CPU architecture, which was not compatible with their previous Intel CPU architecture.  In addition, their GPU architecture changed from an Nvidia processor to an ATI (now AMD) processor. Thus, to run legacy games, Microsoft had to create an efficient mechanism for emulating the previous game console, both in terms of its CPU and GPU.  This is most easily accomplished using virtualization techniques.  Other techniques would have been more expensive and less performance.  Note that I have not reviewed the Xbox 360 software and hardware to confirm that they use virtualization. In addition, Microsoft's foray into cloud gaming is based upon normal data center service models, which include providing both specialized hardware and software via virtual machines. Microsoft is increasingly depending upon cloud gaming services to extend their market share, with industry expectations that Microsoft will announce support for cloud gaming on Sony consoles; this is in keeping with the concessions they made as part of their recent Activision/Blizzard acquisition.  I also note that in Microsoft's earning report as of January 30, 2024, the gaming division now earns more revenue than the Windows division, for the first time in company history.

- Amazon Luna is a cloud gaming service.  Such services will, as a matter of efficiency, use a virtual machine mechanism to isolate game players from each other, as well as to provide flexible scaling of services based upon demand.  The ability to play a game on one console from another console is not new – the existing consoles from Sony and Microsoft have provided backwards compatibility – but the bulk of revenue in the

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER – PRELIMINARY DRAFT

gaming field is from the games, not the hardware that is used to display them.  Amazon does not have a gaming console, instead their games are played on a variety of end-user devices.  This general trend of decoupling the games from the end-user device is clearly a byproduct of the benefits of virtualization – the virtual machine can create whatever environment is needed for the game, while the graphics are displayed on the end-user device.

- Nvidia GeForce Now provides a large collection of games that are run on Nvidia's own cloud gaming platform and then displayed on the end-user devices.  While I have not reviewed the technical implementation of the Nvidia service, given its structure as a cloud service offering, it is reasonable to expect that their implementation will use normal data center techniques for virtualizing services. This allows numerous users to play games simultaneously, with the appearance that each one is running on their own machine – this is the very essence of virtualization.

In addition, I found at least one public project that allows running PS5 games on Windows and Mac OS, which also incorporates the methods taught in the patents.  See https://pcsx5.org, which says: "PCSX5 is a beta PlayStation 5 emulator project based on hardware-assisted virtualization which allows you to play PS4 and PS5 games on your PC & macOS. It requires your PS5 console to grab "play-station device identifier" (PDIX) and original PS4 / PS5 games."  I note that this is consistent with my observation that using virtualization is the simplest and most effective way to implement this functionality – if there were an easier way, an open source project like this would have used it.

The cloud gaming space is a rapidly growing one.  According to Fortune Business Insights, the consolidated annual growth rate (CAGR) from 2023 to 2030 is projected to be 39.46%, which moves from a $5.76 billion market in 2022 to an $84.97 billion market in 2030. It is difficult to imagine this level of growth if the industry needed to find an alternative to the virtualization mechanisms that are routinely used today.

Thus, based upon my review of the information available to me,

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER – PRELIMINARY DRAFT

- The patents appear to be technically sound.
- The patents appear to read onto the common implementation models for console emulation in both end-user console devices ("backwards compatibility" for old game support) and for enabling end user devices to play games that are emulated in the cloud, with an end-user device interacting with the cloud service via the internet.
- I am not aware of any alternatives to the virtual machine model that we use today to implement this type of functionality.
- The claims of the '637 and '118 patents describe techniques that are consistent with publicly available information from Microsoft. Without using these technologies, Microsoft would need to explore alternatives that are less efficient and more expensive.
- The clouding of the title of these patents materially impairs the ability to assert them, which means that the owner has lost substantial value.
- The value of these patents moving forward, as part of the increased growth of cloud gaming, means that the techniques taught by these patents have significant potential to grow in value – a $90 billion market is a truly lucrative one for licensing critical technology such as these patents represent. Thus, I would expect the patent owner to license these patents on reasonable terms to Amazon, Microsoft, Sony, Nvidia, and other companies participating in both console and cloud gaming businesses, which seem to be converging.

Please note that this is not a formal report, and that while they are correct relative to my knowledge and analysis of the specific facts, they are subject to change upon a formal review, drafting of a report, and more detailed examination of additional evidence.


Sincerely,

*W. Anthony Mason*

W. Anthony Mason

# EXHIBIT H

**Mitchell West**

| | |
|---|---|
| **From:** | Gillum, Monica <Monica.Gillum@kingcounty.gov> |
| **Sent:** | Thursday, April 4, 2024 10:23 AM |
| **To:** | Erin Bernstein |
| **Cc:** | Heidi Bradley; Mark Walters; Mitchell West |
| **Subject:** | RE: KHALID V. MICROSOFT;  19-2-02755-0 SEA |

Good Morning~

Thank you for the update.


*Monica*
*Bailiff to Judge James (Jim) E. Rogers*

**From:** Erin Bernstein <ebernstein@bradleybernstein.com>
**Sent:** Thursday, April 4, 2024 10:08 AM
**To:** Gillum, Monica <Monica.Gillum@kingcounty.gov>
**Cc:** Heidi Bradley <hbradley@bradleybernstein.com>; walters@lowegrahamjones.com; west@lowegrahamjones.com
**Subject:** Re: KHALID V. MICROSOFT; 19-2-02755-0 SEA

[EXTERNAL Email Notice! ] External communication is important to us. Be cautious of phishing attempts. Do not click or open suspicious links or attachments.

Ms. Gillum—

I'm writing to inform chambers that this case has been removed, and that the pending motion therefore need not be decided.

Thank you,

Erin Bernstein

Get Outlook for iOS

**From:** Erin Bernstein
**Sent:** Monday, March 25, 2024 6:52:06 PM
**To:** Gillum, Monica <Monica.Gillum@kingcounty.gov>
**Cc:** Heidi Bradley <hbradley@bradleybernstein.com>; walters@lowegrahamjones.com <walters@lowegrahamjones.com>; west@lowegrahamjones.com <west@lowegrahamjones.com>
**Subject:** RE: KHALID V. MICROSOFT; 19-2-02755-0 SEA

Ms. Gillum—
Good afternoon! I'm writing on behalf of Microsoft in the matter of Khalid v. Microsoft  (case no. 19-2-02755-0 SEA). I'm following up on my voicemail from earlier this morning, in the event that e-mail is preferable.

We understood from Judge Rogers that he anticipated issuing an order on the parties' respective motions for summary judgment by March 15. We have not yet received the order, so I wanted to check in to make sure that we had not missed the issued order, as this case is not assigned to Judge Rogers for all purposes.

As an update, the parties have a status conference before Judge Straley next week, and must submit their joint pretrial form this Friday.

Thank you for your assistance,
Erin Bernstein

**Erin Bernstein**
*(she/her)*
California Office

T 510-380-5801
ebernstein@bradleybernstein.com
bradleybernstein.com

BBS

BRADLEY
BERNSTEIN
SANDS

CONFIDENTIALITY NOTICE: This e-mail message may contain confidential or privileged information.
If you have received this message by mistake, please do not review, disclose, copy, or distribute the e-mail.
Instead, please notify us immediately by replying to this message or telephoning us. Thank you.