THE HONORABLE JAMAL WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ATM SHAFIQUL KHALID; XENCARE SOFTWARE, INC., | Case No. 2:24-cv-00449 |
| Plaintiffs, | **DEFENDANT MICROSOFT'S OPPOSITION TO MOTION TO REMAND** |
| v. | |
| MICROSOFT CORPORATION, a Washington Corporation, | NOTE ON MOTION CALENDAR: MAY 3, 2024 |
| Defendant. | |

MICROSOFT'S OPP. TO REMAND MOTION
CASE NO. 2:24-CV-00449

1

**BRADLEY BERNSTEIN SANDS LLP**
2800 FIRST AVENUE, SUITE 326
SEATTLE, WA  98121
206.337.6551

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................. 3

INTRODUCTION ........................................................................................ 6

FACTUAL BACKGROUND ........................................................................... 7

ARGUMENT .............................................................................................. 11

    I.    This Court Has Subject Matter Jurisdiction to Hear The State Court Action Because It "Arises Under" Federal Patent Law ............................ 11

        A.  Necessarily Raised ...................................................................... 12

        B.  Actually Disputed ....................................................................... 15

        C.  Substantial .................................................................................. 15

        D.  Federal/State Balance ................................................................. 17

    II.    Removal Was Timely and Adequately Pled ................................................. 18

        A.  Removal Was Timely Because Microsoft Removed Less than 30 Days After the Expert Reports Put It on Notice that Plaintiffs Sought Infringement Damages in the State Court Action ............................... 18

        B.  If This Court Finds Microsoft Had Notice of Infringement Damages Prior to March 15, 2024, It May Nonetheless Find Removal Timely 19

        C.  Microsoft Adequately Pled Grounds for Removal ............................ 20

    III.    Even If This Court Finds This Action Lacks Federal Subject Matter Jurisdiction, It Should Exercise Supplemental Jurisdiction Over This Action After Consolidating with Microsoft's Declaratory Judgment Action. ............................................................................................. 21

    IV.    If The Court Remands This Action, It Should Deny Plaintiffs' Fee Request ................................................................................................. 23

CONCLUSION ......................................................................................... 24

MICROSOFT'S OPP. TO REMAND MOTION
CASE NO. 2:24-CV-00449

2

**BRADLEY BERNSTEIN SANDS LLP**
2800 FIRST AVENUE, SUITE 326
SEATTLE, WA  98121
206.337.6551

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>FEDERAL CASES</u>

3

*AEP Excluded Assetco, LLC v. Bellanergy, LLC,*
4      No. 4:23-CV-3638; 2024 WL 385695 (S.D. Tex. Feb. 1, 2024) .................... 12, 16, 20

5

*Baer v. First Options of Chicago, Inc.,*
6      72 F.3d 1294 (7th Cir. 1995) ....................................................................... 22

7

*Bd. of Regents v. Nippon Tel. & Telegraph Corp.,*
8      414 F.3d 1358 (Fed. Cir. 2005) ................................................................... 15

9

*Carvalho v. Equifax Info. Servs., LLC,*
10      629 F.3d 876 (9th Cir. 2010) ...................................................................... 18

11

*Christianson v. Colt Indus. Operating Corp.,*
12      486 U.S. 800 (1988) .................................................................................... 11

13

*Corp. v. Stone, No. 64505-6-I, 2012 Wash. App. 1019,*
14      109 F.3d 1577 ............................................................................................. 14

15

*Dart Cherokee Basin Operating Co., LLC v. Owens,*
16      574 U.S. 81 (2014) ...................................................................................... 20

17

*Dell Techs. Inc. v. TiVo Corp.,*
18      392 F. Supp. 3d 704 (W.D. Tex. 2019) ....................................................... 12

19

*Forrester Env't Servs., Inc. v. Wheelabrator Techs., Inc.,*
20      715 F.3d 1329 (Fed. Cir. 2013) ................................................................... 16

21

*Gardner v. UICI,*
22      508 F.3d 559 (9th Cir. 2007) ...................................................................... 23

23

*Georgia-Pacific Corp. v. United States Plywood Corp.,*
24      318 F. Supp. 1116 (S.D.N.Y. 1970) ............................................................ 13

25

*Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.,*
26      545 U.S. 308 (2005) .................................................................................... 15

BRADLEY BERNSTEIN SANDS LLP
2800 FIRST AVENUE, SUITE 326
SEATTLE, WA  98121
206.337.6551

*Gunn v. Minton,*
    568 U.S. 251 (2013) .................................................................................*passim*

*Harris v. Bankers Life & Cas. Co.,*
    425 F.3d 689 (9th Cir. 2005)................................................................. 18

*Jang v. Boston Scientific Corp.,*
    767 F.3d 1334 (Fed. Cir. 2014)............................................................. 15

*Jim Arnold Corp. v. Hydrotech Sys., Inc.,*
    109 F.3d 1567 (Fed. Cir. 1997)............................................................. 14

*Jones v. W. Virginia Div. of Corr. & Rehab.,*
    No. 2:21-CV-00645; 2022 WL 1019552 (S.D.W. Va. Apr. 5, 2022) ......................... 19

*Martin v. Franklin Capital Corp.,*
    546 U.S. 132 (2005) ............................................................................. 23

*MJ & Partners Rest. Ltd. P'ship v. Zadikoff,*
    126 F. Supp. 2d 1130 (N.D. Ill. 1999) ................................................. 22

*Tjeknavorian v. Mardirossian,*
    56 F. Supp. 3d 561 (S.D.N.Y. 2014) .................................................... 22

*Univ. of Colo. Found., Inc.,*
    196 F.3d 1372 (Fed. Cir. 1999)............................................................. 17

*VariBlend Dual Dispensing Sys. LLC v. Crystal Int'l (Grp.) Inc.,  (ER),*
    *2019 WL 4805771 (S.D.N.Y. Sept. 30, 2019)* ...................................... 15, 17

*Vermont v. MPHJ Tech. Invs., LLC,*
    803 F.3d 635 (Fed. Cir. 2015)............................................................... 11

*Webb v. 3M Co.,*
    627 F. Supp. 3d 612 (S.D. Miss. 2022) ............................................... 20

*Xitronix Corp. v. KLA-Tencor Corp.,*
    916 F.3d 429 (5th Cir. 2019)................................................................ 16

## STATE CASES

MICROSOFT'S OPP. TO REMAND MOTION
CASE NO. 2:24-CV-00449

4

**BRADLEY BERNSTEIN SANDS LLP**
2800 FIRST AVENUE, SUITE 326
SEATTLE, WA  98121
206.337.6551

*IGT v. Acres,*
    2023 WL 6212756 (D. Nev. Sept. 25, 2023 2023)................................................. 14, 14

*Molina v. Lexmark Int'l, Inc.,*
    No. CV0804796MMMFMX, 2008 WL 4447678 (C.D. Cal. Sept. 30, 2008) ............. 9

*Ranchod v. AIG Prop. Cas. Co.,*
    2024 WL 489541 (W.D. Wash. Feb. 7, 2024).......................................................... 18


**FEDERAL STATUTES**

28 U.S.C.
    § 2 ........................................................................................................................... 21
    § 1331 ................................................................................................................. 11, 21
    § 1338 ................................................................................................................. 17, 21
    § 1446 ................................................................................................................. 18, 20
    § 1454 ..................................................................................................................... 20
    § 1367 ..................................................................................................................... 22

35 U.S.C.
    § 286 ....................................................................................................................... 13

**STATE STATUTES**

Washington
    RCW 49.44.140............................................................................................................ 8

MICROSOFT'S OPP. TO REMAND MOTION
CASE NO. 2:24-CV-00449

5

**BRADLEY BERNSTEIN SANDS LLP**
2800 FIRST AVENUE, SUITE 326
SEATTLE, WA  98121
206.337.6551

1

## **INTRODUCTION**

2      During years of litigating this breach of contract case in state court, plaintiffs

3 Xencare Software Inc. and ATM Shafiqul Khalid ("Plaintiffs") repeatedly averred that

4 they sought only to litigate issues related to ownership of three patents registered to

5 Plaintiffs before bringing a threatened future federal patent infringement action.[1]

6 Then, two months before trial (and nearly at the close of discovery), Plaintiffs served

7 expert reports making clear for the first time that they were seeking patent

8 infringement-based (not simply tort or contract-based) remedies in the state court

9 action, requesting hundreds of millions of dollars in damages. Plaintiffs base these

10 damages on a patent infringement reasonable royalty theory that requires a finding

11 that Microsoft infringed the patents.

12      Until the expert reports were served in the state court action, Microsoft had

13 taken Plaintiffs at their word and understood the factual allegations of infringement in

14 this case to be immaterial to the state court action—because they were not relevant to

15 any of Plaintiffs' causes of action, not necessary to resolve the question of patent

16 ownership, and unrelated to his asserted damages. It was only after Microsoft received

17 the expert reports in March 2024 that it became clear what Plaintiffs were attempting:

18 to use their expert reports as a Trojan Horse to obtain patent infringement damages

19 through the backdoor as "contract damages" in a court that lacks jurisdiction to

20 interpret the patents or adjudicate patent infringement issues. Microsoft timely

21 removed, even though the parties were awaiting a decision on motions for summary

22 judgment that had been argued on March 1, 2024. [2]

23      _____

24      [1] Bradley Dec., ¶¶ 4-5.

25      [2] Plaintiffs' argument that Microsoft timed the removal to avoid a ruling on
26 summary judgment is flatly belied by the facts that Microsoft itself moved for

This Court should deny Plaintiffs' motion to remand. As Plaintiffs' expert reports finally made clear after years of avoidance, their extraordinary "contract" damages rest on infringement-dependent theories. In light of Plaintiffs' recently disclosed damages theory, the state court damages claims *cannot* be resolved absent construction of patent claims and a full infringement analysis as to (at least) Microsoft's accused technologies. These are precisely the kinds of claims that can only—and must—be adjudicated exclusively by federal courts, which have exclusive jurisdiction to hear patent disputes of this type.

Further, even if this Court determines that it lacks subject matter jurisdiction over the damages claims in this action, this Court should consolidate this action with Microsoft's recently-filed noninfringement case[3] in this Court, and exercise supplemental jurisdiction because both the legal and factual bases of the two are inextricable—indeed, Plaintiffs have moved to stay the declaratory relief action precisely because "a ruling on ownership of the Disputed Patents under Khalid's employment agreement" is a necessary part of resolving that case.[4]

## FACTUAL BACKGROUND

This case arose out of two employment agreements between Khalid and Microsoft. Khalid worked at Microsoft for two separate periods: 1998 to 2006 and 2012

---

summary judgment and had repeatedly inquired with the court regarding the anticipated timing of a ruling, emailing the department for a status update weeks after the court's stated date for a ruling came and went. [Bradley Dec., at Exh. A. (Email to King County Superior Court).]

[3] Microsoft recently moved to consolidate this action with the related non-infringement action, *Microsoft v. Khalid, et al.*, 2:24-cv-00448-JNW. *See* Dkt. 15 (Motion to Consolidate).

[4] Plaintiffs' Motion to Stay, *Microsoft v. Khalid, et al.*, 2:24-cv-00448-JNW, Dkt. 16 (Apr. 26, 2024) at p. 7.

BRADLEY BERNSTEIN SANDS LLP
2800 FIRST AVENUE, SUITE 326
SEATTLE, WA  98121
206.337.6551

to 2015. Prior to beginning employment with Microsoft for each of those periods, Microsoft and Khalid executed an employment agreement. Both employment agreements had provisions related to ownership of any inventions Khalid might develop during his time at Microsoft. In language directly mirroring Washington statute (RCW 49.44.140), for any inventions developed during his Microsoft employment that he wished to claim as his own, Khalid agreed to bear the burden of proving that the invention was:

> 1) developed entirely on his own time;
>
> 2) not directly related to any of Microsoft's business;
>
> 3) not related to any of Microsoft's actual or anticipated research and development;
>
> 4) does not result from any work performed by Khalid for Microsoft.[5]

This provision was in both the 1998 and 2011 employment agreements signed by Khalid.

Khalid and Microsoft disagreed as to who owned two alleged inventions that Khalid began developing during the 1998-2006 period of employment, which he continued to develop and worked to patent during his second stint at Microsoft. In 2006, when Khalid first told Microsoft that he'd sought patents on the two ideas, Microsoft told Khalid that he did not have ownership rights. Khalid abandoned his patent applications and conceded that Microsoft owned this subject matter. Unbeknownst to Microsoft and in an attempt to profit from ideas that he knew were not his, after he quit Microsoft, Khalid re-applied for patents—copying and pasting

---

[5] This contractual language comports precisely with the Washington statutory requirements of RCW 49.44.140, which permits employers to set these conditions for employee ownership of inventions developed during their work for a particular company.

MICROSOFT'S OPP. TO REMAND MOTION
CASE NO. 2:24-CV-00449

8

**BRADLEY BERNSTEIN SANDS LLP**
2800 FIRST AVENUE, SUITE 326
SEATTLE, WA  98121
206.337.6551

the contents of his prior patent applications into new ones. When Khalid rejoined Microsoft, he was supposed to disclose any inventions that he 1) owned AND 2) developed while he was not a Microsoft employee. Khalid contends that he disclosed the disputed patent applications upon re-joining Microsoft and that simply because he did so, he owns the patents. Microsoft maintains that any such disclosure is irrelevant to Khalid's false claim of exclusive ownership. Khalid did not own the alleged inventions at the time he signed the 2011 agreement, and he did not satisfy the four requirements for exempting them from Microsoft's ownership.

This action, filed in state court in 2019, alleged causes of action related to the 2011 employment agreement, including: breach of contract, breach of the covenant of good faith and fair dealing, violation of Washington's consumer protection act, and declaratory judgment. Though the factual section of the operative complaint includes a summary allegation that Microsoft is infringing the disputed patents, none of the causes of action in the complaint relies on Microsoft's infringement as a source of liability, nor does the prayer for relief reference infringement-based damages. This avoidance was purposeful.

During the state court action, Khalid said that he would later bring a separate infringement lawsuit against Microsoft if he prevailed on the ownership dispute. Bradley Decl. ¶ 3. In February 2024, the parties attempted to mediate[6] the entirety of their dispute—discussing a settlement of the present action that also obviated the

---

[6] As Plaintiffs' motion for remand relies heavily upon mediation-related documents and communications, Microsoft addresses those and related communications herein; such communications are not privileged in assessing whether a case is removable and when a party has notice of a case's removability. *Molina v. Lexmark Int'l, Inc.*, No. CV0804796MMMFMX, 2008 WL 4447678, at *9 (C.D. Cal. Sept. 30, 2008).

MICROSOFT'S OPP. TO REMAND MOTION
CASE NO. 2:24-CV-00449

9

BRADLEY BERNSTEIN SANDS LLP
2800 FIRST AVENUE, SUITE 326
SEATTLE, WA  98121
206.337.6551

theoretical infringement case that Plaintiffs had thus far declined to file. In that context, Plaintiffs included analysis of infringement-related damages in connection with potential settlement of the threatened future infringement case. At that time, Plaintiffs' counsel explicitly conveyed (through the mediator) that the expert report they shared was a draft, which was subject to change prior to submission of any reports in the state court litigation. Bradley Decl. ¶ 7.

Microsoft was surprised when, on March 15, 2024, it received Plaintiffs' expert reports in the state court action—and those reports contained the SAME analysis of infringement-related damages but as a measure of contractual damages. *See* Dkt. 1-3 (Mason Report); Dkt. 1-4 (Cragun Report). Notwithstanding that Plaintiff's expert reports purport to be directed to the state court causes of action, in substance the March 2024 reports explicitly note patent infringement as a foundation of damages.

In his report, Mr. Mason notes that:

> In the current case, I have been asked to evaluate the patents, determine if they apply to game console emulation and cloud gaming, and if so, to identify potential parties that may be infringing these patents.[7]

Likewise, Mr. Cragun's report[8] calculates damages by "applying a success rate to the total royalties and prejudgment interest to account for the risk associated with Khalid successfully litigating his patent infringement claims against Microsoft." Thus, for the first time in the years of litigating the state court case, the expert reports put Microsoft unequivocally on notice that Plaintiffs would request that the jury find that Microsoft infringed his patents (which have not been construed, and cannot be construed by a state court), and that Microsoft's purported breach of contract therefore resulted in

---

[7] Dkt. 1-3 (Mason Report) at 2.

[8] Dkt. 1-4 (Cragun Report) at 16.

MICROSOFT'S OPP. TO REMAND MOTION
CASE NO. 2:24-CV-00449

10

BRADLEY BERNSTEIN SANDS LLP
2800 FIRST AVENUE, SUITE 326
SEATTLE, WA  98121
206.337.6551

"lost royalties" to Plaintiffs of hundreds of millions of dollars.

## ARGUMENT

**I. This Court Has Subject Matter Jurisdiction to Hear The State Court Action Because It "Arises Under" Federal Patent Law.**

Microsoft removed this action under 28 U.S.C. § 1331 (federal question jurisdiction), § 1338(a) (original jurisdiction for claims "arising under any Act of Congress relating to patents"), and § 1338(b) (original jurisdiction for any claims "asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws").

Under § 1338(a), a case is removable where it "arises under" federal patent law. Courts consider a civil action to "arise under" federal patent law if federal patent law creates the cause of action asserted or if the case involves a federal patent issue that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Vermont v. MPHJ Tech. Invs., LLC*, 803 F.3d 635, 645 (Fed. Cir. 2015) (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)); see also *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808-09 (1988). In this case, the federal patent issue revealed by Plaintiffs' expert reports is necessarily raised in this action. The parties dispute the patent issues, which are substantial. Finally, this Court can resolve the claims here without disrupting the federal-state balance of power.

The basis for federal jurisdiction need not be, as Plaintiffs assert, on the face of the complaint. Rather, section 1446(b)(3) permits a defendant to file a notice of removal within "thirty days after receipt by the defendant, . . . of a copy of an amended pleading, motion, order or *other paper* from which it may first be ascertained that the case is one which is or has become removable." Microsoft does not contend that federal jurisdiction was evident from the face of the operative complaint (it was

not); rather it was the final expert reports ("other papers") that Microsoft received on March 15 that allowed it to first ascertain that the action had become removable.

### A.   Necessarily Raised

Substantive patent issues are necessarily raised in this case because a core theory of Plaintiffs' breach of contract damages arises from Microsoft's purported infringement of the patents at issue, and any analysis of patent infringement also requires a federal court to construe the claims. Where even one theory of breach of contract relies upon the court's determination of patent issues, the entire cause of action "necessarily raises" the issue for purposes of removal. *Dell Techs. Inc. v. TiVo Corp.*, 392 F. Supp. 3d 704, 717 (W.D. Tex. 2019) (finding that plaintiff's breach-of-contract claim necessarily raised a federal issue of patent infringement because it raised a question as to whether a third party's patent was infringed); *see also AEP Excluded Assetco, LLC v. Bellanergy, LLC*, No. 4:23-CV-3638, 2024 WL 385695, at *4 (S.D. Tex. Feb. 1, 2024).

The federal patent issues are necessarily raised in this case, as made clear by the Cragun report—which opines on contract damages in this case. The Cragun report's thin veneer of state court claims does not change the fact that Cragun's analysis focuses on the "lost royalty" damages suffered by Plaintiffs directly because of purported infringement of his patents. In performing the damages analysis, the Cragun report relies on Mr. Mason's conclusion that, among others, "the claims of the '637 and '118 patents describe techniques that are <u>consistent with</u> publicly available information from Microsoft. Without <u>using</u> these technologies, Microsoft would need to explore alternatives that are less efficient and more expensive." Cragun Report (Dkt 1-4), ¶ 21 (emphasis added). The Cragun Report uses Microsoft Xbox consoles that "allegedly includes Khalid's patented technology" as the royalty base. *Id.*, ¶ 25, Exh. 3. In determining the royalty rate, the Cragun Report looks to the application of the

MICROSOFT'S OPP. TO REMAND MOTION
CASE NO. 2:24-CV-00449

12

**BRADLEY BERNSTEIN SANDS LLP**
2800 FIRST AVENUE, SUITE 326
SEATTLE, WA  98121
206.337.6551

market approach, income approach, and cost approach in the context of the patent-specific analysis set forth in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), which pertains to patent infringement damages. *Id*. ¶ 26, n.71. The Cragun Report looks specifically at royalty damages within the six-year statutory period for patent damages. *Id.*, ¶ 31, Ex. 4; 35 U.S.C. § 286. Consistent with patent damages law, it limits royalty damages to U.S. damages. Cragun Report at 17, n.81. Patent damages expert reports presume liability, but if no liability is found then no damages are owed. Thus, for patent royalty damages to apply, the state court must determine whether Microsoft is infringing—necessitating construction of the claims of the patents—and apparently under Plaintiffs' theory also would ask the state court to determine whether Sony, Nvidia, and Amazon (nonparties to this case) are also infringing.[9]

The Cragun report's calculation of "lost enterprise" damages also relies upon the state court deciding patent issues. Khalid represented to the USPTO that he is the assignee of the disputed patents. Yet Cragun's report relies on Microsoft's own research costs (also characterized as Microsoft's "unjust enrichment" in avoiding research and development costs)—which can only be cognizable if Microsoft itself has been found to infringe. Cragun Report at pp. 24-25. Cragun also ties Khalid's purported lost earning potential not to his prowess as an inventor, but to his inability to achieve a CTO position because his ability to market products have allegedly been

---

[9] For instance, the Mason report notes that Sony is a party potentially using the "Khalid Patents" in its platforms; Cragun's royalty damages calculation relies on this alleged infringement by Sony. Cragun Report (Dkt. 1-4) at pp. 17-18 (citing Mason report).

undermined by Microsoft and others' purported infringement.[10] *Id.* at p. 23-24.

Because Plaintiffs' damages theories on the state law contract claims require the court to determine the scope of the patents and whether they were infringed by Microsoft, as well as potentially by nonparties Nvidia, Amazon, and Sony, the issues are "necessarily raised" by the state law case. If unable to raise the federal patent issues, Plaintiffs would be unable to prove damages—a vital element of a contract and good faith and fair dealing cause of action under Washington law.

Plaintiffs' reliance on *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1577 (Fed. Cir. 1997) and *Corbis Corp. v. Stone*, No. 64505-6-I, 2012 Wash. App. 1019, at *33 (Ct. App. Mar. 26, 2012) are unavailing. In *Jim Arnold*, the plaintiff was seeking recission of an assignment agreement and had not overreached to demand patent infringement-related damages, so the court in that case did not need to evaluate whether infringement occurred. *Jim Arnold*, 109 F.3d at 1577. In contrast, here, each damages theory relies upon a finding of infringement. Nor does *Corbis Corp.* assist Plaintiffs; that case, an unpublished Washington Court of Appeal action, does not mention infringement or royalties, let alone whether any party sought to remove or otherwise challenged the state court's jurisdiction. This case is also unlike *IGT v. Acres*— in *IGT*, the defendants argued that plaintiff's state-court damages claim would be affected by the federal court's determination regarding a patent; the court said the damages claim "may possibly (but not necessarily) be affected." 2023 WL 6212756 (D.

---

[10] Infringement is key to this analysis as well. Khalid does not otherwise explain how Microsoft has prevented him from obtaining a CTO position or representing publicly that he was the inventor of the disputed patents. Accordingly, we are left to assume that the "lost CTO salary" damages (which Cragun notes are due to "Microsoft's wrongful acts") are somehow due to Microsoft allegedly using the disputed patents without payment or acknowledgement.

Nev. Sept. 25, 2023). Here, however, the Plaintiffs themselves have relied on patent infringement for their damages claim, making infringement "necessarily raised."

### B.   Actually Disputed

Microsoft vigorously disputes that it has infringed the disputed patents—to that end, Microsoft has filed a declaratory relief action in this Court, seeking a judgment of non-infringement as to the disputed patents. See *Microsoft v. Khalid, et al.*, 2:24-cv-00448-JNW ("Declaratory Judgment Action"). As should be clear from its filing of the Declaratory Judgment action, Microsoft is fully prepared to litigate the issue of non-infringement, but it should not—and cannot—be forced to defend against infringement claims put in issue in state court just two months before trial in a court that lacks jurisdiction to adjudicate such claims.

### C.   Substantial

To support removal, the federal question must also be "substantial." *Gunn*, 568 U.S. at 258; see also *VariBlend Dual Dispensing Sys. LLC v. Crystal Int'l (Grp.) Inc.*, No. 18 CIV. 10758 (ER), 2019 WL 4805771, at *11 (S.D.N.Y. Sept. 30, 2019). "The substantiality inquiry ... looks ... to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. This "justif[ies] resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

The Federal Circuit has held "that issues of inventorship, infringement, validity and enforceability present sufficiently substantial questions of federal patent law to support jurisdiction under Section 1338(a)." *Bd. of Regents v. Nippon Tel. & Telegraph Corp.*, 414 F.3d 1358, 1363 (Fed. Cir. 2005) (citations omitted); see also *VariBlend*, 2019 WL 4805771, at *11. In disputes like the one at issue here in which a plaintiff's contract claim requires resolution of underlying issues of infringement for its remedies theory, courts have found the substantiality factor satisfied. *See id.* For instance, in *Jang v.*

*Boston Scientific Corp.*, the court found the federal claims substantial because "Jang's right to relief on the contract claim … depends on an issue of federal patent law—whether [defendants] infringed Jang's patents." 767 F.3d 1334, 1337-38 (Fed. Cir. 2014).

Courts are more likely to find a patent issue substantial where the patents at issue are "currently valid and enforceable" because state court findings regarding such patents have "the potential to render that patent effectively unenforceable." *Xitronix Corp. v. KLA-Tencor Corp.*, 916 F.3d 429, 441 (5th Cir. 2019). Here, we are still well within the patents' 20-year term. This contrasts with cases like *Gunn*, which "entailed a 'merely hypothetical,' 'backward-looking' review of a lawyer's conduct regarding a now-invalid patent." *Id.* (quoting *Gunn*, 568 U.S. at 261).

Second, where (as here) there exists the possibility that the patentee would file suits alleging infringement by non-parties to the litigation (*i.e.*, here, Plaintiffs' theory identifies Sony, Nvidia, and Amazon as allegedly needing a license to practice the patents), courts likewise find the substantiality factor satisfied because the state court suits have the potential of issuing conflicting rulings. "'Forward-looking' patent issues … pose questions involving live patents, and their resolution risks impacting patent-holder's rights." *AEP Excluded Assetco, LLC v. Bellanergy, LLC*, No. 4:23-CV-3638, 2024 WL 385695, at *5 (S.D. Tex. Feb. 1, 2024); *see also Jang*, 767 at 1337 (patent infringement and validity issues were substantial as they were "neither entirely backward-looking nor hypothetical" and had "real world potential" for impacting "subsequently arising infringement suits affecting other parties"); *Forrester Env't Servs., Inc. v. Wheelabrator Techs., Inc.*, 715 F.3d 1329, 1334 (Fed. Cir. 2013) (explaining that forward-looking issues are substantial because they "could result in inconsistent judgments between state and federal courts").

Here, just as in the above-cited cases, allowing the instant suit to proceed in state court risks the state and federal systems rendering inconsistent rulings. These

MICROSOFT'S OPP. TO REMAND MOTION
CASE NO. 2:24-CV-00449

16

BRADLEY BERNSTEIN SANDS LLP
2800 FIRST AVENUE, SUITE 326
SEATTLE, WA  98121
206.337.6551

1    rulings could not only be inconsistent as between this case and Microsoft's declaratory

2    relief action in this Court, which seeks a finding of non-infringement, but also as to

3    any later cases where Plaintiffs sue Amazon, Sony, or Nvidia in federal court for the

4    purported "infringement" alleged in the Mason and Cragun reports. The risk of state

5    court, which by statute can conduct none of the claim construction or infringement

6    analysis of a federal court, issuing a ruling that could affect future infringement suits

7    against third parties makes the patent issues here "substantial."

8         **D.  Federal/State Balance**

9         As discussed above, any construction of the patent claims at issue here may also

10   have res judicata implications for future federal actions on the same patent. *VariBlend*

11   *Dual Dispensing Sys. LLC v. Crystal Int'l (Grp.) Inc.*, No. 18 CIV. 10758 (ER), 2019 WL

12   4805771, at *12 (S.D.N.Y. Sept. 30, 2019). Resolution of claim construction and

13   infringement issues here, then, has the potential to impact future federal patent

14   litigation. *Cf. Gunn*, 568 U.S. at 261 ("Because of the backward-looking nature of a legal

15   malpractice claim, the question is posed in a merely hypothetical sense: If Minton's

16   lawyers had raised a timely experimental-use argument, would the result in the patent

17   infringement proceeding have been different? No matter how the state courts resolve

18   that hypothetical 'case within a case,' it will not change the real-world result of the

19   prior federal patent litigation.").

20        The question can also be resolved without disturbing the federal/state balance.

21   There is a recognized interest in uniformity in patent law. *Univ. of Colo. Found., Inc.*,

22   196 F.3d at 1372 (Fed. Cir. 1999); *see also VariBlend* 2019 WL 4805771, at *13. Moreover,

23   Congress has given federal courts exclusive jurisdiction over patent law. 28 U.S.C.

24   § 1338(a). States, therefore, do not have an interest in interpreting questions of federal

25   patent law. Under the *Gunn* factors, this is precisely the kind of case that implicates

26   forward-looking patent rights—and should be in federal court.

MICROSOFT'S OPP. TO REMAND MOTION
CASE NO. 2:24-CV-00449

17

BRADLEY BERNSTEIN SANDS LLP
2800 FIRST AVENUE, SUITE 326
SEATTLE, WA  98121
206.337.6551

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## II.  Removal Was Timely and Adequately Pled

### A.  Removal Was Timely Because Microsoft Removed Less than 30 Days After the Expert Reports Put It on Notice that Plaintiffs Sought Infringement Damages in the State Court Action

The procedure for removing an action is governed by 28 U.S.C. § 1446, which sets three key deadlines that affect removability. First, when a case "stated by the initial pleading is removable on its face," § 1446(b)(1) gives a defendant 30 days from service of that pleading to file notice of removal. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005) ; *see also* 28 U.S.C. § 1446(b)(1). Section 1446(b)(1)'s 30-day deadline is triggered only if the basis for removal "is ascertainable from examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 886 (9th Cir. 2010). If the case is not removable based on the initial pleading but the defendant later receives an "amended pleading, motion, order or other paper" that makes a ground for removal "unequivocally clear and certain," § 1446(b)(3) gives the defendant 30 days from receipt of that document to file a notice of removal. *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1090-91 (9th Cir. 2021); see also *Ranchod v. AIG Prop. Cas. Co.*, No. C23-1642JLR, 2024 WL 489541, at *3 (W.D. Wash. Feb. 7, 2024). The purpose of the standard is to "bring[] certainty and predictability to the process" and "avoid[] gamesmanship in pleading." *Dietrich* at 1094.

The reason that Microsoft has removed this action several years into litigation in state court is because of precisely the kind of pleading gamesmanship that the Ninth Circuit was concerned with in *Dietrich*. While Plaintiffs note that their initial and subsequent complaints allege infringement as a "fact," each iteration of their complaint was careful <u>not</u> to plead an infringement cause of action or to unequivocally seek damages related to infringement.

Microsoft's Opp. to Remand Motion
Case No. 2:24-cv-00449

18

BRADLEY BERNSTEIN SANDS LLP
2800 FIRST AVENUE, SUITE 326
SEATTLE, WA  98121
206.337.6551

1    Plaintiffs also rely on confidential mediation information in support of their

2    contention that Microsoft was "on notice" of the patent-dependent damages. But

3    Plaintiffs' inclusion of patent infringement damages at mediation was not an

4    "unequivocally clear and certain" indication that infringement would be an issue in

5    the state court case; the reports exchanged for mediation were explicitly in draft form,

6    and were specifically submitted for the purpose of resolving the contract action and

7    obviating any hypothetical future patent infringement action at mediation.

8    Articulation of a damages theory in a <u>draft</u> report submitted for a mediation

9    intended to prevent prospective infringement claims in a future federal case is

10   equivocal at best. Simply put, Microsoft did not know at the time of mediation what

11   would be included in the final expert reports specific to the state case, and—given the

12   clear delineation of subject matter jurisdiction— reasonably expected that they would

13   *not* include patent infringement damages.

14   Plaintiffs also contend that their preliminary list of expert witnesses in 2023 and

15   early 2024 put Microsoft on notice of infringement-dependent damages. But, again, a

16   preliminary list of witnesses—including five expert witnesses disclosed in 2023, only

17   one of whom was retained by Plaintiffs—and vague descriptions of their testimony

18   cannot be deemed "unequivocally clear and certain" as to invoking federal

19   jurisdiction. Indeed, even expert witness *reports* have been found to be equivocal

20   where the materials leave defendants "attempting to hit what appeared to be a

21   moving or, at least, obscured target." *Jones v. W. Virginia Div. of Corr. & Rehab.*, No.

22   2:21-CV-00645, 2022 WL 1019552, at *5 (S.D.W. Va. Apr. 5, 2022).

23   **B.   If This Court Finds Microsoft Had Notice of Infringement Damages Prior
       to March 15, 2024, It May Nonetheless Find Removal Timely**

24

25   Even if this Court credits Plaintiffs' argument that Microsoft was on notice of

26   their reliance on infringement to prove damages, this Court may—and should—

extend the 30-day notice requirement in this patent action. 28 U.S.C. § 1454, which provides for removal specifically of patent claims/counterclaims, offers a less strict deadline for filing for removal: the 30-day period can be "extended at any time for cause shown." 28 U.S.C. 1454(b)(2). For example, the Southern District of Texas recently found removal timely because, even though pleadings outside the 30-day limit arguably implicated patent law, "earlier on in the litigation, before [p]laintiff explicitly raised an infringement-based breach of contract claim, and Defendant raised a related counterclaim, it was less clear that patent issues were so intertwined with the case." *AEP Excluded Assetco, LLC v. Bellanergy, LLC*, No. 4:23-CV-3638, 2024 WL 385695, at *6 (S.D. Tex. Feb. 1, 2024).

Similarly, in this case, Plaintiffs explicitly told Microsoft that they did *not* intend to bring a patent infringement matter until they had settled the ownership of the patents vis-à-vis the state court breach of contract action. Bradley Decl. ¶ 3. Further during the mediation, the parties agreed to mediate all current and any potential claims, which would have obviated Plaintiff's planned infringement action. *Id.* ¶ 6. It was not until the expert reports were submitted that Plaintiffs finally articulated and wholly committed to their theories of damages specific to the state court action, which turned on Microsoft's alleged infringement, that Microsoft was unequivocally on notice of the federal issues.

## C.  Microsoft Adequately Pled Grounds for Removal

Although Plaintiffs contest the adequacy of Microsoft's Notice of Removal, such notices must only give "a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). That statement does not require the removing party to provide evidence. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014). Accordingly, a notice of removal need only include a "plausible allegation" that a defendant has adequate grounds for removal. *Id.* at 89; *see also Webb v. 3M Co.*, 627 F.

MICROSOFT'S OPP. TO REMAND MOTION
CASE NO. 2:24-CV-00449

20

**BRADLEY BERNSTEIN SANDS LLP**
2800 FIRST AVENUE, SUITE 326
SEATTLE, WA  98121
206.337.6551

Supp. 3d 612, 619 (S.D. Miss. 2022)

Here, Microsoft's Notice of Removal not only identifies in detail the ground for removal, but also the factual basis for those grounds. As pled in the Notice, the legal basis for removal was as follows:

> This Court has original jurisdiction over Count I (the Washington Consumer Protection Act), Count II (breach of contract), and Count III (breach of good faith and fair dealing) in this action under 28 U.S.C. 1331, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1454(a) as the Plaintiffs in *Khalid v. Microsoft* assert claims for relief arising under federal patent law. In addition, this Court has jurisdiction over Count I under 28 U.S.C. § 1338(b)( "[t]he district courts shall have original jurisdiction of any civil action claim under the copyright, patent, plant variety protection or trademark laws"), because the Washington Consumer Protection Act prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

Dkt. 1 at ¶ 13.

Though not required to attach evidence in support of its grounds for removal, Microsoft both pled specific facts giving its grounds for removal, *see* Dkt. 1 at ¶¶ 4-8, and attached as exhibits to its Notice of Removal both expert reports supporting its grounds for removal. Dkt. 1-3, 1-4 (Mason Report and Cragun Report).

### III. Even If This Court Finds This Action Lacks Federal Subject Matter Jurisdiction, It Should Exercise Supplemental Jurisdiction Over This Action After Consolidating with Microsoft's Declaratory Judgment Action.

Given Plaintiffs' decision to ground their state court damages theories in patent infringement, this Court has federal subject matter jurisdiction over the state court claims in this action because those claims "arise under" federal patent law. However, even if this Court finds otherwise, it should exercise supplemental jurisdiction over the state law claims because they are part of the same case and controversy as the

MICROSOFT'S OPP. TO REMAND MOTION
CASE NO. 2:24-CV-00449

21

**BRADLEY BERNSTEIN SANDS LLP**
2800 FIRST AVENUE, SUITE 326
SEATTLE, WA 98121
206.337.6551

federal Declaratory Judgment case related to this action.

As stated in 28 U.S.C.A. § 1367, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." In assessing whether to exercise supplemental jurisdiction, "[a]ll that is needed is a 'loose factual connection between the counterclaims and the primary claims.'" *MJ & Partners Rest. Ltd. P'ship v. Zadikoff*, 126 F. Supp. 2d 1130, 1134 (N.D. Ill. 1999) (quoting *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)). In cases where state claims are related to a later-filed federal case, courts have found it appropriate to exercise supplemental jurisdiction. See *Tjeknavorian v. Mardirossian*, 56 F. Supp. 3d 561, 568 (S.D.N.Y. 2014) (where state court action was remanded and defendants subsequently filed a related copyright case in federal court, federal court exercised supplemental jurisdiction over previously remanded state claims).

Here, Microsoft has requested the consolidation of this action with the Declaratory Judgment action precisely because the two actions arise from the same factual basis—the ownership and purported infringement of the disputed patents. In its motion to consolidate this case with the Declaratory Judgment action, Microsoft noted that the two cases:

> should be consolidated because they are so intertwined that, if decided separately, it would create prejudice and confusion. Determination of two issues will fundamentally affect both cases: if Microsoft is found to own the patents, it will be entitled to the declaration of non-infringement sought in the Declaratory Judgment Case because it is at least a joint owner.

Dkt. 15, p. 7.

The issue of patent infringement is likewise common to both cases, through

MICROSOFT'S OPP. TO REMAND MOTION
CASE NO. 2:24-CV-00449

22

**BRADLEY BERNSTEIN SANDS LLP**
2800 FIRST AVENUE, SUITE 326
SEATTLE, WA  98121
206.337.6551

Plaintiffs' own framing of his damages claim in this action. Through the Cragun and Mason reports, Plaintiffs finally made clear they seek patent infringement damages in this action. The statement that "[n]either of the expert reports allege patent infringement," Mot. at 6, is disingenuous, as both reports explicitly note infringement as a source of damages. Plaintiffs seek to recover infringement damages in this case, which is the very question at the heart of the Declaratory Judgment Case; this Court should coordinate the two cases and exercise supplemental jurisdiction over the state law claims.

### IV.  If The Court Remands This Action, It Should Deny Plaintiffs' Fee Request

"Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005); see also *Gardner v. UICI*, 508 F.3d 559, 561 (9th Cir. 2007). Here, Microsoft has an objectively reasonable basis for seeking removal, as described above.

Plaintiffs contend that fees are appropriate because Microsoft removed this case to delay trial, or for other inappropriate reasons. Contrary to Plaintiffs' assertions, however, Microsoft is not attempting to dodge a summary judgment ruling—both parties had filed dispositive motions for a hearing on March 1, 2024, after which the Court indicated it would rule by March 15, 2024. When a ruling did not come as expected by the parties on that date, Microsoft twice emailed the state court chambers over the subsequent two weeks to inquire about the expected timeline for a decision. Bradley Dec. ¶ 5, Exh. A. (Email to King County Superior Court). Microsoft continues to believe that its summary judgment motion should have—and would have— disposed of the entire case. However, due to the statutory timeline for removal, once the expert reports put Microsoft on notice of a basis for federal jurisdiction, it was

MICROSOFT'S OPP. TO REMAND MOTION
CASE NO. 2:24-CV-00449

23

**BRADLEY BERNSTEIN SANDS LLP**
2800 FIRST AVENUE, SUITE 326
SEATTLE, WA  98121
206.337.6551

1  unable to wait any longer for the state court to rule on its motion.

2        Microsoft notified the department that had been considering the cross-motions

3  for summary judgment of the removal the day after it occurred, to ensure the

4  department was aware of the development and avoid unnecessary work by the court.

5  Likewise, Microsoft filed its removal notice before the state court hearing on trial

6  readiness to avoid a waste of judicial resources before the court was to lose jurisdiction

7  due to the removal.

8        Accordingly, Microsoft's removal was objectively reasonable and filed in good

9  faith; even if this Court remands this action it should decline to award fees.

10  <u>**CONCLUSION**</u>

11        For the foregoing reasons, this Court should deny Plaintiffs' motion to remand.

12

13  Dated: April 29, 2024

14

15

16

17

18

19

20

21

22

23

24

25

26

MICROSOFT'S OPP. TO REMAND MOTION
CASE NO. 2:24-CV-00449

24

**BRADLEY BERNSTEIN SANDS LLP**
2800 FIRST AVENUE, SUITE 326
SEATTLE, WA  98121
206.337.6551

1

2                                                    _____s/ Heidi B. Bradley_____

3                                                    Heidi B. Bradley, WSBA No. 35759
                                                     BRADLEY BERNSTEIN SANDS LLP
4                                                    2800 First Avenue, Suite 326
                                                     Seattle, WA 98121
5                                                    206-337-6551
                                                     hbradley@bradleybernstein.com
6

7                                                    Erin Bernstein, *admitted pro hac vice*

8                                                    Gina Elliott, *admitted pro hac vice*
                                                     BRADLEY BERNSTEIN SANDS LLP
9                                                    3911 Harrison St., Suite 100
10                                                   Oakland, CA 94611
                                                     ebernstein@bradleybernstein.com
11                                                   gelliott@bradleybernstein.com

12
                                                     Irene Yang, *admitted pro hac vice*
13                                                   SIDLEY AUSTIN LLP
14                                                   555 California Street, Suite 2000
                                                     San Francisco, CA 94104
15                                                   irene.yang@sidley.com

16
                                                     *Attorneys for Defendant Microsoft Corp.*
17

18

19    I hereby certify that this memorandum contains 5,684 words, in accordance with Local

20    Civil Rules.

21

22

23

24

25

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record via the Court's CM/ECF system on April 29, 2024.

Executed on the 29th day of April, 2024 at Los Angeles, California

*s/ Gina Elliott*

Gina Elliott
Bradley Bernstein Sands LLP
3911 Harrison St., Suite 100
Oakland, CA 94611

BRADLEY BERNSTEIN SANDS LLP
2800 FIRST AVENUE, SUITE 326
SEATTLE, WA  98121
206.337.6551